LORENE SEBASTIAN v. DAISY M. KLUTTZ

No. 6919SC400

(Filed 22 October 1969)

**1. Husband and Wife § 24— alienation of affections — criminal conversation — tort actions**

Alienation of affections and criminal conversation are actions in tort.

**2. Husband and Wife § 24— alienation of affections — nature of the tort**

One who, without privilege to do so, purposely alienates a husband's affections from his wife, or who has sexual intercourse with him, is liable for the harm thereby caused to the wife's legally protected marital interests.

**3. Husband and Wife § 24— alienation of affections — elements**

The gravamen of the action for alienation of affections is the wife's loss of her protected marital right of the affection, society, companionship and assistance of her husband; and where there is no element of sexual defilement of her husband, malice must be shown.

**4. Husband and Wife § 24— alienation of affections — malice**

Malice as used in an action for alienation of affections means unjustifiable conduct causing the injury complained of.

**5. Husband and Wife § 25— alienation of affections — sufficiency of evidence**

In an action by the wife to recover damages for the alleged alienation of affections of her husband, there was ample evidence that plaintiff and her husband were married and that there was some love and affection existing between them which was alienated and destroyed by the wrongful and malicious acts of defendant; therefore, defendant's motion for judgment as of nonsuit was properly overruled.

**6. Husband and Wife § 24— alienation of affections — husband's willingness to be seduced**

The consent and apparent willingness on the part of the plaintiff's husband to be seduced cannot be claimed as a defense by the defendant in an action for alienation of affections.

**7. Husband and Wife § 27— criminal conversation — nature of the tort**

The term "criminal conversation" is synonymous with "adultery"; the cause of action is founded on the violation of the fundamental right of exclusive sexual intercourse between spouses, and also on the loss of consortium.

**8. Husband and Wife § 27— criminal conversation — elements**

The elements of criminal conversation are the actual marriage between the spouses and sexual intercourse between defendant and plaintiff's

spouse during the coverture; alienation of affections is not a necessary element.

**9. Husband and Wife § 28— criminal conversation — sufficiency of evidence**

Evidence in the wife's action for criminal conversation *is held* sufficient to justify submission of the issue to the jury.

**10. Husband and Wife §§ 24, 27— alienation of affections — separation agreement — accrual of action**

A valid separation agreement entered into between the spouses is not a bar to an action for alienation of affections or for criminal conversation which accrued prior to the date of the separation agreement.

**11. Limitation of Actions § 4— accrual of actions — disability**

A cause of action accrues at the time the right to institute and maintain a suit arises, if at such time the demanding party is under no disability.

**12. Husband and Wife §§ 24, 27— alienation of affections and criminal conversation — damages — separation agreement**

In the trial of wife's actions for alienation of affections and for criminal conversation, a separation agreement between the wife and her husband in which the wife released all rights arising out of the marriage (except for payments by the husband of $100 per month for 12 consecutive months) *is held* not to bar recovery for damages from defendant's tortious conduct that the wife may sustain after the execution of the separation agreement.

**13. Husband and Wife § 1— marital duties of the husband**

It is the duty of the husband, nothing else appearing, to supply support and maintenance to his wife, and this duty may be enforced in a court of law.

**14. Husband and Wife § 10— separation agreement — release of right to support**

The right of a married woman to support and maintenance is a property right which she may release by an agreement executed in accord with G.S. 52-6.

**15. Husband and Wife § 26— alienation of affections — damages — loss of support**

The wife's loss of support by the husband, if shown to be of value, is a proper element of damages in an action for alienation of affections.

**16. Husband and Wife §§ 26, 29— damages — loss of support — burden of proof**

In actions for alienation of affections and for criminal conversation, plaintiff has the burden of proving not only that a loss of support proximately resulted from the tortious acts of defendant, but also the value of such loss of support.

**17. Husband and Wife § 11— separation agreement — intent of parties**

The intent of the parties as expressed in a separation agreement is controlling.

**18. Husband and Wife § 11— separation agreement — effect of contract rules**

The ordinary rules governing the interpretation of contracts apply to separation agreements, and the courts are without power to modify them.

**19. Husband and Wife § 24— alienation of affections — burden of proof**

In a wife's action for alienation of affections, plaintiff has the burden of proof to show a loss of support as an element of the damages sustained, and she may do this by either circumstantial or direct evidence.

**20. Husband and Wife § 26— alienation of affections — instruction on compensatory damages — loss of support — proximate cause — support payments**

In an action for alienation of affections, the jury should have been instructed, on the issue of compensatory damages, that it was a question of fact for them to determine upon all the evidence presented, which included a separation agreement executed between plaintiff and her husband, whether plaintiff had sustained any loss of support as a proximate result of the tortious conduct of the defendant, and that if plaintiff had suffered no such loss they should not consider it as an element of damages, and, further, that if the husband had partially fulfilled his obligation to support his wife, then the plaintiff did not sustain a loss to the extent of such support.

**21. Husband and Wife § 25— alienation of affections — mortuary tables — competency**

In wife's action for alienation of affections, it was proper to admit the mortuary tables in evidence to prove the life expectancy of the wife.

**22. Husband and Wife § 26— alienation of affections — instructions on life expectancy — mortuary tables**

In wife's action for alienation of affections, the jury should have been instructed, on the issue of the wife's life expectancy, that life expectancy is a question of fact and is to be determined from all the evidence in the case, and that the mortuary tables are not conclusive but are to be considered by the jury only as evidence in connection with other evidence on the age, health, constitution, and habits of the wife.

**23. Husband and Wife §§ 26, 29— instructions on damages — future losses — present cash value**

In wife's actions for alienation of affections and for criminal conversation in which the jury had been instructed that they could consider the life expectancy of the wife, it was prejudicial error for the trial judge, on the issue of compensatory damages, to fail to instruct the jury that they should limit their award for future losses to the present cash value or present worth of such losses.

**24. Husband and Wife § 29— criminal conversation — instructions on compensatory damages — G.S. 1-180**

In an action for criminal conversation, trial court's instructions on the issue of compensatory damages *is held* not to comply with G.S. 1-180 in that the law relating to compensatory damages was not applied to the facts.

**25. Husband and Wife §§ 26, 29— alienation of affections — criminal conversation — identity of issues and damages — instructions**

In this trial of the wife's actions for alienation of affections and for criminal conversation, where the two causes of action and the elements of damages were so connected and intertwined that each cause of action became an element of damages in the other cause of action, only one issue of compensatory damages and one issue of punitive damages should have been submitted to the jury; and the jury should have been instructed, *inter alia*, that plaintiff, if entitled to recover anything, was entitled to the present cash value of such damages she had sustained or would sustain to her legally protected marital interests as a proximate result of the wrongful conduct of defendant, the jury to consider loss of consortium, the circumstances tending to show sexual relations between plaintiff's husband and defendant, the wife's humiliation and mental anguish, and the wife's loss of support.

**26. Husband and Wife § 26— alienation of affections — measure of damages**

In wife's action for the alienation of affections of her husband, the measure of damages is the present value in money of the support, consortium, and other legally protected marital interests lost by her through the defendant's wrong, and, in addition thereto, she may also recover for the wrong and injury done to her health, feelings, or reputation.

**27. Husband and Wife § 1— "consortium" defined**

Consortium is the conjugal fellowship of husband and wife, and the right of each to the company, cooperation, affection, and aid of the other in every conjugal relation.

**28. Husband and Wife § 29— criminal conversation — measure of damages**

Although the measure of damages in an action for criminal conversation is incapable of precise measurement, the jury in awarding damages may consider the spouse's loss of consortium, mental anguish, humiliation, injury to health, and loss of support.

**29. Husband and Wife § 26— alienation of affections — punitive damages**

In an action for alienation of affections, punitive damages may be awarded where the conduct of the defendant was wilful, aggravated, malicious, or of a wanton character.

**30. Husband and Wife § 29— criminal conversation — punitive damages**

Punitive or exemplary damages may also be recovered in an action for criminal conversation.

Appeal by defendant from *Crissman, J.*, 24 March 1969 Civil Session of Superior Court held in Rowan County.

Plaintiff alleges two separate causes of action, one for alienation of the affections of plaintiff's husband and the other for criminal conversation.

Issues were submitted to and answered by the jury as follows:

"1.  Did the defendant alienate the affections of the plaintiff's husband as alleged in the complaint?

ANSWER:  Yes.

2.  What amount of actual damages, if any, is the plaintiff entitled to recover for such alienation?

ANSWER:  $15,000.

3.  What amount of punitive damages, if any, is the plaintiff entitled to recover for such alienation?

ANSWER:  $2,500.

4.  Did the defendant engage in criminal conversation with plaintiff's husband as alleged in the complaint?

ANSWER:  Yes.

5.  What amount of actual damages, if any, is plaintiff entitled to recover for such criminal conversation?

ANSWER:  $2,500.

6.  What amount of punitive damages, if any, is the plaintiff entitled to recover for such criminal conversation?

ANSWER:  $10,000."

From the judgment entered upon the verdict, defendant appealed to the Court of Appeals.

*George L. Burke, Jr., for plaintiff appellee.*

*Robert M. Davis and Clarence E. Horton, Jr., for defendant appellant.*

Mallard, C.J.

The first question discussed by defendant in her brief concerns the assignment of error relating to the failure of the court to allow her motion for nonsuit at the close of all the evidence in the cause of action alleging alienation of affections.

[1]    These actions alleging alienation of affections and criminal

conversation are actions in tort. *Hardison v. Gregory*, 242 N.C. 324, 88 S.E. 2d 96 (1955).

[2]   One who, without privilege to do so, purposely alienates a husband's affections from his wife, or who has sexual intercourse with him, is liable for the harm thereby caused to her legally protected marital interests. *Brown v. Brown*, 121 N.C. 8, 27 S.E. 998 (1897); Restatement, Torts, § 690; *Hinnant v. Power Co.*, 189 N.C. 120, 126 S.E. 307 (1925). "The legally protected marital interests of one spouse include the affections, society and companionship of the other spouse, sexual relations and the exclusive enjoyment thereof. In the case of a husband, they include the wife's services in the home. In the case of the wife, they include support by the husband." Restatement, Torts, § 683.

[3, 4]   The gravamen of the action for alienation of affections is the wife's loss of her protected marital right of the affection, society, companionship and assistance of her husband, and where there is no element of sexual defilement of her husband, malice must be shown. Malice as used in an action for alienation of affections means "unjustifiable conduct causing the injury complained of." *Rose v. Dean*, 192 N.C. 556, 135 S.E. 348 (1926). Malice also means "a disposition to do wrong without legal excuse (*R. R. v. Hardware Co.*, 143 N.C. 54), or as a reckless indifference to the rights of others." *Cottle v. Johnson*, 179 N.C. 426, 102 S.E. 769 (1920).

In 41 Am. Jur. 2d, Husband and Wife, § 467, it is said:

"Alienation by persuasion differs from alienation by adultery in that, in the former, loss of consortium must be proved, while in the latter, it is conclusively presumed."

In the case of *Bishop v. Glazener*, 245 N.C. 592, 96 S.E. 2d 870 (1957), the Supreme Court said:

"The essential elements of an action for alienation of affections are the marriage, the loss of affection or consortium, the wrongful and malicious conduct of the defendant, and a causal connection between such loss and conduct. . . ."

\*        \*        \*

"The wrongful and malicious conduct of the defendant need not be the sole cause of the alienation of affections. It suffices, according to the rule in a large majority of the cases, if the wrongful and malicious conduct of the defendant is the controlling or effective cause of the alienation, even though there were other causes, which might have contributed to the alienation. Anno.

19 A.L.R. 2d, sec. 6, p. 500 *et seq.*, where the cases are cited; 27 Am. Jr., Husband and Wife, p. 129.

Manifestly, if the affection of the wife was destroyed by the habits and conduct of the husband, or other cause, without the malicious interference or procurement of a third person, then such third person would not be liable. *Hankins v. Hankins, supra.* It is fundamental to a recovery against a third person that the alienation of affections resulted from his malicious interference. Anno. 108 A.L.R., pp. 426-7, where many cases are cited; Anno. 19 A.L.R. 2d, pp. 471-509, Element of Causation in Alienation of Affections Action."

Defendant contends that plaintiff's evidence failed to show that any genuine love and affection existed between plaintiff and her husband or that defendant had alienated any love and affection which did exist.

**[5]**    The evidence of the plaintiff tended to show that she and her husband were married 16 October 1940, and they have one son who is married and has his own home. On 11 April 1968 plaintiff's husband left the home they were occupying. Plaintiff testified:

"Mr. Sebastian and I have been separated before during our marriage. The first separation was in 1963. We remained apart then for two months, but we seen each other during that time. We were then reconciled. The second separation occurred approximately a year later. Mr. Sebastian left the premises on the first occasion and I left on the second occasion. I seen that after I had left out that it was better for me to go back, I felt more for Mr. Sebastian that I had thought I did when I had left. I returned to 1310 Glenwood Avenue, and Mr. Sebastian and I lived together until he left April 11, 1968."

Plaintiff also testified that on the occasion when she left her husband they remained separated for five weeks. On both occasions they had reestablished their home after the separation.

Plaintiff testified that her relationship with her husband was good during Christmas 1967 and that during February 1968 he expressed affection for her on a number of occasions.

Plaintiff's evidence tended to show that defendant's husband died in July 1967. In November 1967 plaintiff's husband started visiting defendant in defendant's home and that thereafter they were seen together frequently in various places by the neighbors and others.

Mrs. Margaret Brooks, a wittness for plaintiff, testified:

"I have seen Mr. Sebastian in or around the residence occupied by Mrs. Kluttz in the past twelve months. I was in my own yard working, mowing, and he was across the street in Mrs. Kluttz's yard and she was there too. They were working in the yard. I have seen them several times. I have seen Mr. Sebastian there in the evening and he would come out in the morning to go to work on John's Piano truck, and that would be about 6:30 or a quarter to seven."

[6]    The evidence also showed that some time prior to the separation, the husband had been unfaithful to his marriage vows. However, this past activity had been forgiven and condoned by the plaintiff prior to the time defendant interfered with the marital relationship existing between plaintiff and her husband. Evidence also tended to show that the tranquility of the home may have been impaired by the drinking and other conduct of the plaintiff's husband. However, this conduct does not appear to have been more than a contributing cause of the separation of plaintiff and her husband. The evidence tended to show defendant's conduct was the controlling and effective cause. Until defendant arrived on the scene, plaintiff and her husband had always resolved their differences. The defendant cites *Warner v. Torrence,* 2 N.C. App. 384, 163 S.E. 2d 90 (1968), in which this Court sustained a nonsuit of the cause of action for alienation of affections on the grounds that the plaintiff failed to show the existence of any genuine love and affection which was alienated and destroyed by the defendant. We think the facts in *Warner v. Torrence* are distinguishable from the facts in the case before us. Here, the evidence tended to show that some love and affection existed between plaintiff and her husband and that they had lived a relatively happy married life for approximately three years prior to the final separation on 11 April 1968. Although plaintiff's life with her husband apparently had not been as happy and tranquil as some marriages are, she was entitled to possess and enjoy all of her legally protected marital interests free from interference by the defendant. The husband and plaintiff were living together until the defendant, after the death of defendant's husband, became involved with plaintiff's husband and finally encouraged him to leave his wife in order to live with her. The consent, and apparent willingness, on the part of the plaintiff's husband to be seduced cannot be claimed as a defense by defendant because the husband cannot thus affect plaintiff's right to her legally protected marital interests. *Powell v. Strickland,* 163 N.C. 393, 79 S.E. 872 (1913).

The only evidence offered by the defendant was a separation agreement entered into between plaintiff and her husband dated 16

July 1968. The execution of the separation agreement was duly acknowledged by plaintiff before the Clerk of the Superior Court of Rowan County on 29 July 1968.

Plaintiff testified on cross-examination:

> "The reason that the deed of separation was entered into was because of the differences between my husband and me. I felt it was to the best interest of my husband and me to sign the deed of separation since he had already took up residence with Mrs. Kluttz."

[5]  There was ample evidence, when viewed in the light most favorable to the plaintiff, that the plaintiff and her husband were married, and that there was some love and affection existing between them which was alienated and destroyed by the wrongful and malicious acts of the defendant. We think in this case the existence of and extent of such love and affection was a matter to be considered and determined by the jury.

We are of the opinion and so hold that the court correctly overruled defendant's motion for judgment as of nonsuit in the action for alienation of affections.

[7]  "The term 'criminal conversation' is synonymous with 'adultery.' The cause of action is founded on the violation of the fundamental right of exclusive sexual intercourse between spouses, and also on the loss of consortium." 42 C.J.S., Husband and Wife, § 697.

[8]  The elements of the cause of action for criminal conversation are the actual marriage between the spouses and sexual intercourse between defendant and plaintiff's spouse during the coverture. Alienation of affections is not a necessary element. 42 C.J.S., Husband and Wife, § 698.

In 41 Am. Jur. 2d, Husband and Wife, § 476, p. 402, it is written:

> "A fundamental right that flows from the relation of marriage, and one that must be maintained inviolate for the well-being of society, is that of one spouse to have exclusive marital intercourse with the other; and whenever a third person commits adultery with either spouse, he or she commits a tortious invasion of the rights of the other spouse, from which a cause of action for criminal conversation arises."

[9]  Defendant has apparently abandoned her motion for judgment of nonsuit to the cause of action alleging criminal conversation. If not, we hold that there was ample circumstantial evidence of criminal conversation between the defendant and plaintiff's hus-

band to require submission of the issue to the jury. *Hardison v. Gregory, supra; Powell v. Strickland, supra.*

[10]    The next question defendant raises relates to the separation agreement between plaintiff and her husband, as a bar to the cause of action and its effect on the introduction of the evidence and the charge of the court. This separation agreement was introduced in evidence by defendant without objection on the part of the plaintiff.

[11]    The general rule is that the cause of action accrues at the time the right to institute and maintain a suit arises, if at such time the demanding party is under no disability. 5 Strong, N.C. Index 2d, Limitation of Actions, § 4, p. 234; *Matthieu v. Gas Co.,* 269 N.C. 212, 152 S.E. 2d 336 (1967). In the instant case the causes of action had accrued and were complete prior to the execution of the separation agreement on 29 July 1968.

[10]    In 2 Lee, N.C. Family Law, § 207, p. 458, it is stated: "The fact that the plaintiff has become divorced from the alienated spouse subsequent to the wrongful acts of the defendant is no bar to the cause of action." In like manner, a valid separation agreement entered into between the spouses is not a bar to the cause of action for alienation of affections or criminal conversation accruing prior to the date of the separation agreement.

[12]    Defendant claims that by the terms of the separation agreement of 29 July 1968, plaintiff released her husband from his legal duty to support her, and therefore she would be entitled to recover damages only up to the date of the separation agreement. We do not agree with this interpretation. The question of the effect of a separation agreement on an action to recover damages for alienation of affections and criminal conversation is one of first impression in this jurisdiction.

[13]    It is the duty of the husband, nothing else appearing, to supply support and maintenance to his wife, and this duty may be enforced in a court of law.

[14]    In 4 Strong, N.C. Index 2d, Husband and Wife, § 10, p. 291, it is said: "The right of a married woman to support and maintenance is a property right which she may release by an agreement executed in accord with G.S. 52-6." There is no contention by either of the parties to this action that the separation agreement was not executed as required by G.S. 52-6.

[15]    The right of the wife to support by the husband is one of her legally protected marital interests. "It is established by the au-

thorities that loss of support, if shown to be of value, is a proper element of damages in a case of this kind." *Johnston v. Johnston,* 213 N.C. 255, 195 S.E. 807 (1938).

The pertinent parts of the separation agreement read as follows:

"NOW, THEREFORE, to that end and for and in consideration of the mutual covenants and agreements hereinafter contained and set forth, the said Walter A. Sebastian, Sr., party of the first part and Lorene T. Sebastian, party of the second part, do hereby agree as follows:

The residence known as 1310 Glenwood Avenue together with a rectangular shaped lot fronting 125 feet on Glenwood Street shall be conveyed to Lorene T. Sebastian and she shall own this property in fee simple.

The residence known as 1308 Glenwood Avenue together with a rectangular shaped lot fronting 100 feet on Glenwood Avenue shall be conveyed to Walter A. Sebastian Sr. and he shall own this property in fee simple.

The present mortgage indebtedness in the amount of $5,210.35 together with this lien therefore shall be divided equally for security purposes between 1308 Glenwood Avenue and 1310 Glenwood Avenue and the husband shall, subject to the lending agency's approval, pay $2605.18 of the current balance and the wife shall assume and pay the other $2605.18.

The husband, Walter A. Sebastian, Sr. agrees to pay to Mrs. Annie P. Trexler, mother of Lorene T. Sebastian, the sum of $3,718. This amount being in reimbursement for the money paid by Mrs. Trexler in repairing the residence at 1308 Glenwood Avenue and tapping into the sewer lines at said residence and for the stove and oven now located in said residence. It is understood by the parties hereto that until the aforesaid amount of $3718 is paid that Mrs. Trexler shall have a right to live at the 1308 Glenwood Avenue residence and shall be entitled to the exclusive possession thereof but when the said amount of $3718 is paid to Mrs. Trexler then the residence at 1308 Glenwood Avenue shall on that day belong to the husband, Walter A. Sebastian, Sr. and he will have the right to it on that day and the right to sell it or otherwise dispose of this property free of any claim on the part of Mrs. Trexler.

It is further understood and agreed that when Mrs. Trexler moves from the residence at 1308 Glenwood Avenue she shall remove only her personal effects and household property that

belongs to her and all the other furnishings and appliances at 1308 Glenwood Avenue shall belong to the husband, Walter A. Sebastian, Sr.

*The husband agrees to pay his wife $100 per month for 12 consecutive months beginning on the 15 day of August, 1968,* and the husband agrees to pay to Walter Woodson, Jr., his wife's attorney, the sum of $250 within thirty days after the execution of this agreement.

Household items shall be divided as follows:

To the husband;

　　1.　Pictures of guns hanging in 1310 residence.

　　2.　One Cherry bedroom suite from 1310 residence.

The said party of the first part, the husband, does hereby release and relinquish unto said Lorene T. Sebastian, her executors and administrators, heirs and assigns, all his rights to share in her estate at her death by virtue of her will or by descent, distribution or otherwise and does further release and relinquish any and all other rights arising out of the marriage relationship in and to any and all real and personal property now owned by his said wife or which may be hereafter acquired by her, and hereby agrees that she may henceforth acquire, hold, manage, convey and alienate her said property without his knowledge or consent just the same as if she had never been married to him, and further does hereby release and relinquish the right to administer upon her estate.

That the said party of the second part, the wife, *does hereby release and relinquish* unto said Walter A. Sebastian, Sr., his executors and administrators, heirs and assigns, *all her right to share in his estate at his death by virtue of his will or by descent, distribution or otherwise and does further release and relinquish any and all other rights arising out of the marriage relationship in and to any and all real and personal property now owned by her said husband or which may be hereafter acquired by him, and hereby agrees that he may henceforth acquire, hold, manage, convey and alienate his said property without her knowledge or consent just the same as if he had never been married to her, and further does hereby release the right to administer upon his estate.*

*Both parties hereto agree that henceforth neither of them will in any manner, molest or interfere with the personal rights,*

*liberties, privileges and affairs of the other, and each shall henceforth live his or her own personal life as he or she may see fit, unrestricted in any manner.*

*It is the purpose and intent of this agreement to separate the lives and estates of the parties hereto* to the end that each of the parties may go his or her way, *and each live his or her own personal life, unmolested, unhampered and unrestricted by the other, just the same as if the parties had never been married to each other."* [Emphasis Added.]

The pertinent parts of the separation agreement which defendant contends prohibit plaintiff from recovering for loss of support are shown in *italics* in the separation agreement set forth above.

**[16]** In this case the plaintiff had the burden of proving not only that a loss of support proximately resulted from the tortious acts of defendant, but also the value of such loss of support.

**[17, 18]** The intent of the parties as expressed in a separation agreement is controlling. *Stanley v. Cox,* 253 N.C. 620, 117 S.E. 2d 826 (1961). "The ordinary rules governing the interpretation of contracts apply to separation agreements and the courts are without power to modify them." *Church v. Hancock,* 261 N.C. 764, 136 S.E. 2d 91 (1964); 4 Strong, N.C. Index 2d, Husband and Wife, § 11.

Defendant does not say in what manner the separation agreement was responsible for ending the loss of affections, comfort, society, companionship and exclusive enjoyment of sexual relations with the husband, nor how they can be determined to end on any certain date.

In McCormick on Damages, § 112, it is said: "Compensation is not limited to the injury which has accrued up to the time of bringing the suit or the time of trial, but if it appears that the estrangement or its effects will be permanent or will continue for some time in the future, the damages must cover this once and for all."

The experience by plaintiff of the humiliation, the mental anguish and hurt feelings, the experience of the irrevocable loss of conjugal kindness, and the companionship of the marital relationship did not end for plaintiff on 29 July 1968 when she and her husband signed the separation agreement.

In addition, the record does not indicate that the husband has complied with or "performed" his obligation under the separation agreement by making the payments therein provided for, conveying the land, or dividing the personal property.

**[12]**    Applying the rules of construction set forth herein, we are of the opinion and so hold that the separation agreement in this case does not operate as a bar to, or release of, the right of plaintiff to recover for any temporary or permanent loss of support the jury may find from the evidence she has or will sustain as a proximate result of the tortious conduct of the defendant, and the jury should have been so instructed.

In this case we are of the opinion and so hold that the judge committed error in charging the jury on the second issue, as follows:

> "[A]nd that you may take into consideration the maintenance and the support that the plaintiff has been accustomed to getting and is entitled to get from a marriage wherein the standard of living and the scale in which they were living had been, and which may have been indicated here from the evidence."

This instruction was not clear and tended to confuse the jury on the question of loss of support, if any, sustained by plaintiff.

**[19]**    This issue upon which the jury was being thus instructed relates to compensatory damages for the loss of alienation of affections. Unless damages result from the tortious act of alienation of affections, there can be no recovery. The burden of proof was on the plaintiff to show a loss of support as an element of the damages sustained. She is permitted to do this by either circumstantial or direct evidence.

**[20]**    The jury should have been instructed that it was a question of fact for them to determine, based on all the evidence presented, including the separation agreement, whether plaintiff had or would sustain any loss of support as a proximate result of the tortious conduct of the defendant, and if plaintiff had suffered no such loss, they should not consider such as an element of damages. The jury should have been further instructed that if the husband had partially fulfilled his obligation to support his wife, then to the extent thereof, the plaintiff did not sustain a loss.

In 42 C.J.S., Husband and Wife, § 694, it is said:

> "The fact of divorce may be pleaded and considered in mitigation of damages, *and a separation agreement whereby either party releases all claims against the other including the right to demand any aid or support, bars recovery for loss of such aid and assistance,* although not for loss of love and affection." [Emphasis Added.]

**[21]**    Defendant contends that the court committed error in al-

lowing the mortuary tables in evidence. We do not agree. We think that it was proper to prove the life expectancy of the plaintiff under the circumstances of this case.

**[22]** Also, defendant assigns as error the failure of the judge to charge on the second issue as to how the jury was to consider the mortuary tables. The judge did not specifically refer to the mortuary tables in the charge but did say "and you may take into consideration along with all other evidence the life expectancy of the plaintiff." This instruction was not sufficient. The judge should have instructed the jury that where the question of the life expectancy of a person is involved, it is for the jury to determine the life expectancy from all the evidence in the case; that life expectancy is a question of fact; that the mortuary tables are not conclusive but are to be considered by the jury only as evidence on the question of life expectancy in connection with other evidence as to age, health, constitution, and habits of such person. Stansbury, N.C. Evidence 2d, § 101; *Harris v. Greyhound Corporation,* 243 N.C. 346, 90 S.E. 2d 710 (1956); *Derby v. Owens,* 245 N.C. 591, 96 S.E. 2d 851 (1957).

**[23]** Defendant contends, and we agree, that the court also committed error in its charge as to this second issue in that it did not limit the recovery of any award the jury should make for future damages to its present worth.

Plaintiff appellee cites *Johnston v. Johnston, supra,* in which Chief Justice Stacy said:

> "It is urged for error that in enumerating the elements of damage 'loss of his assistance' was included, without limiting such future loss, if any, to its present worth or present cash value. *Lamont v. Hospital,* 206 N.C., 111, 173 S.E., 46.

> Without making definite ruling upon this point it is sufficient to say that no reference is made in the court's charge to any future loss of assistance. *Murphy v. Lbr. Co.,* 186 N.C., 746, 120 S.E., 342. It is established by the authorities that loss of support, if shown to be of value, is a proper element of damages in a case of this kind."

Defendant appellant cites 3 Strong, N.C. Index 2d, Damages, § 16. Defendant also cites *Bryant v. Carrier,* 214 N.C. 191, 198 S.E. 619 (1938), which was an action for alienation of affections and criminal conversation in which the jury found that there was no alienation of affections but that the defendant did have "immoral relations" with the plaintiff's wife as alleged in the complaint and awarded compensatory and punitive damages. The Court said:

"The exception to the court's instruction to the jury, that if they found the plaintiff's injury and loss would continue in the future they should award the present value of such prospective damages as they found would accrue, cannot be sustained. While compensation cannot be based upon a mere conjectural probability of future loss (17 C.J., 764), here there was evidence to justify the instruction to which the exception was noted. 'If it appears that the estrangement (between husband and wife) or its effects will be permanent, or will continue for some time in the future, the damages must cover this once and for all.' McCormick on Damages, 409; *Riggs v. Smith,* 62 Idaho, 43; 17 C.J., 762; 30 C.J., 1148."

In the case before us the jury had been instructed that they could consider the life expectancy of the plaintiff. We are of the opinion and so hold that it was prejudicial error for the judge, on the issue of compensatory damages, to fail to instruct the jury that they should limit the award, if any, for future losses to the present cash value or present worth of such losses. *Faison v. Cribb,* 241 N.C. 303, 85 S.E. 2d 139 (1954).

[24]    Defendant also assigns as error portions of the charge of the court on the issues of compensatory and punitive damages in the action for criminal conversation. The entire charge of the court with respect to the fifth and sixth issues is as follows:

"If you answer this issue 'Yes,' you must consider the fifth issue. If you answer it 'No,' you need not consider the fifth issue or the sixth issue.

Now, members of the jury, you will have to determine from the evidence and by its greater weight whether or not the plaintiff is entitled to actual damages for some criminal conversation, and you will have to determine from all the evidence what that might be worth. What such a defilement of the marriage bed would be worth. The plaintiff has sued for Five Thousand Dollars and she says that wouldn't be too much.

The defendant says you ought not to get to that issue at all; but that if you do, that there hasn't been anything much destroyed either; and that it ought not to be much. The plaintiff says that you ought to give compensary (sic) damages under the sixth issue, 'What amount of punitive damages is the plaintiff entitled to recover for criminal conversation?'

The court charges you as to whether or not you give any punitive damages is a matter in your wise discretion. It is up to you

as to whether or not that you feel under all these circumstances that there should be from the evidence and by its greater weight, 'Smart-money,' so to speak, or punitive damages.

Now, the court has defined punitive damages to you heretofore and will not repeat it. You must determine what, if any, that should be within the limit of what has been asked for in the complaint.

ANY OTHER CONTENTIONS?

For the Plaintiff:  No, sir.

For the Defendant:  No, sir.

COURT:  You may take these issues, retire to the jury room, and say how you find."

The parties stipulated as to the correctness of the record, and the record reveals the above as being the entire charge of the court on the fifth and sixth issues. We are bound by the record.

The above instruction does not comply with the provisions of G.S. 1-180 in that the law is not applied to the facts. The final mandate as to each issue does not clearly instruct the jury what they should consider and find in answering the issues. The jury was left to wander in the field of speculation and conjecture. Although the jury had been instructed under the third issue as to punitive damages generally, and it was not necessary to repeat such instructions, they were not properly instructed as to the measure of compensatory damages for criminal conversation.

**[25]**  The court in its final mandate on the compensatory issue in the action for alienation of affections did not instruct the jury to consider the criminal conversation between plaintiff's husband and defendant.

In Restatement, Torts, § 683, comment k., on the question of damages for alienation of affections, it is stated:

"In an action for alienation of affections, a husband is entitled to recover damages for the loss of his wife's affections and his emotional distress caused thereby, even though there is no harm to any other incident of the marriage relation. Thus, if there is a loss of affections, the husband can recover, although the wife still lives and cohabits with him and performs all the household services to which he is entitled. If, however, the alienation of affections is accompanied or followed by loss of services in the home, a separation or divorce, or sexual relations with the defendant, such harms may be included by the jury in assessing

the amount of damages recoverable. In determining the amount to be awarded for loss of affections and emotional distress resulting therefrom, the character of the relations existing between the husband and the wife before the defendant's interference therewith is a factor to be considered. If the marital relation was already strained and impaired by frequent quarrels so that the parties were not living happily together, or if for other reasons the affection of the alienated spouse was slight, the amount of recovery will be diminished thereby."

In Restatement, Torts, § 685, comment e., on the question of damages for criminal conversation, it is stated:

"The plaintiff is entitled to recover for emotional distress resulting from the fact that the defendant has had sexual relations with his wife. In the determination of the amount recoverable for such emotional distress, the husband's neglect or indifference toward his wife is a factor to be considered. If, during the marriage with the plaintiff, the wife has repeatedly had sexual relations with the defendant, the plaintiff's damages will be enhanced, if she has previously had sexual relations with other men his damages will be reduced. If, in addition to the loss of exclusive cohabitation with his wife, the plaintiff has lost her affections and service in the home, he is entitled to recover therefor. He is also entitled to recover for any medical expenses incurred by reason of the pregnancy or illness of his wife resulting from the intercourse with the defendant."

Also, in Restatement, Torts, § 690, it is stated:

"One who alienates the affections of a husband or induces a husband to separate from his wife or not to return to her or who has sexual intercourse with him is liable to the wife for harm thereby caused to any of her legally protected marital interests under the same conditions as would permit the husband to recover for similar wrongs as stated in §§ 683-689."

Under comment b. of § 690, it is stated that:

"In an action by a married woman under the rule stated in this Section, she may recover for the loss of her husband's affections and other incidents of the marriage relation which receive legal protection on behalf of the husband, as, for example, the exclusive right to cohabitation with him and the right to his society and companionship. The damages may include recovery for emotional distress caused by an invasion of such interests. If the marriage relation is disrupted and the husband is no

longer supporting her, this fact may be considered in the determination of damages, and in this connection the wealth of the husband and the position in society which the spouses enjoyed are significant factors. If there has been a divorce, any alimony which the wife is awarded or any property settlement by her husband are factors indicating the extent to which she has or has not been deprived of support by the defendant's misconduct."

In *Powell v. Strickland, supra,* which was an action to recover damages for criminal conversation with plaintiff's wife and the alienation of her affections, the Court said:

"The consent of the wife to her own defilement is no defense to the action [citations omitted], since the wrong relates to the injury which the husband sustains by the dishonor of his marriage bed; the alienation of his wife's affections; the destruction of his domestic comfort; the suspicion cast upon the legitimacy of her offspring, the loss of consortium, or the right to conjugal fellowship of his wife, to her company, cooperation and aid in every conjugal relation; the invasion and deprivation of his exclusive marital rights and privileges; his mental suffering, injured feelings, humiliation, shame and mortification, caused by the loss of her affections and the disgrace which the tortious acts of defendant have brought or heaped upon him, and which are proximately caused by said wrong. [citations omitted.] And for these results the plaintiff is entitled to recover compensatory damages, as the authorities cited will show. He may also have added by the jury, in their sound discretion, a reasonable sum as punitive, vindictive, or exemplary damages, or smart money, for the willful and wanton conduct of defendant towards him; and these damages, though not susceptible of proof at a money standard, may be fixed by the jury in view of all the facts and circumstances."

[26]    In a cause of action for alienation of affections of the husband from the wife, the measure of damages is the present value in money of the support, consortium, and other legally protected marital interests lost by her through the defendant's wrong. In addition thereto, she may also recover for the wrong and injury done to her health, feelings, or reputation. *Bryant v. Carrier, supra; Cottle v. Johnson, supra;* 42 C.J.S., Husband and Wife, § 692.

[27]    "Consortium" is defined in Black's Law Dictionary, 4th Ed., as follows:

"Conjugal fellowship of husband and wife, and the right of each

to the company, co-operation, affection, and aid of the other in every conjugal relation."

[28] In a cause of action for criminal conversation the measure of damages is incapable of precise measurement; however, it has been held, and we think properly so, that the jury in awarding damages may consider the loss of consortium, mental anguish, humiliation, injury to health, and loss of support by the wife. *Bryant v. Carrier, supra.*

[25] In an action for alienation of affections, criminal conversation is not a necessary element. In an action for criminal conversation, the alienation of affections is not a necessary element. However, on the issues of compensatory and punitive damages, in this case where there is evidence of both, they both become elements of the damages in each cause of action.

[29] In actions for alienation of affections punitive damages may be awarded in addition to compensatory damages where the conduct of the defendant was willful, aggravated, malicious, or of a wanton character. *Powell v. Strickland, supra; Chestnut v. Sutton,* 207 N.C. 256, 176 S.E. 743 (1934).

[30] Punitive or exemplary damages may also be recovered in an action for criminal conversation. 42 C.J.S., Husband and Wife, § 706; *Chestnut v. Sutton, supra.*

[25] In this case we are of the opinion and so hold that because the two causes of action and the elements of damages here are so connected and intertwined, only one issue of compensatory damages and one issue of punitive damages should have been submitted to the jury. We also hold that as to this issue of compensatory damages, the jury should have been instructed, *inter alia,* that plaintiff, if entitled to recover anything, was entitled to recover the present cash value of such damages as the jury might find by the greater weight of the evidence she had sustained or would sustain to her legally protected marital interests as a proximate result of the wrongful conduct of the defendant. In arriving at their verdict on this issue, the jury should consider loss of consortium, the circumstances tending to show sexual relations between defendant and plaintiff's husband, the humiliation and mental anguish caused by the invasion of such interests, and any loss of support the jury may find she has and will sustain as a proximate result of the tortious conduct of the defendant. *Cottle v. Johnson, supra; Johnston v. Johnston, supra; Powell v. Strickland, supra; Hyatt v. McCoy,* 194 N.C. 760, 140 S.E. 807 (1927); *Bryant v. Carrier, supra; Chestnut v. Sutton, supra;* McCormick on Damages, § 112.

Plaintiff has other assignments of error, some of which may have merit; but since they probably will not recur on a new trial, we do not deem it necessary to discuss them.

For the errors committed, there must be a

New trial.

MORRIS and HEDRICK, JJ., concur.