**Lee Dossie ANDREWS, Plaintiff,**

v.

**P. Andrew PATTERSON, Defendant.**

**No. C–83–1074–G.**

United States District Court,
M.D. North Carolina,
Greensboro Division.

May 16, 1984.

Lee Dossie Andrews, pro se.

Fred Harrison, Greensboro, N.C., for plaintiff.

J. LeVonne Chambers, Charlotte, N.C., for defendant.

## MEMORANDUM OPINION

ERWIN, District Judge.

This matter is before the court on defendant's motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12 of the Federal Rules of Civil Procedure. Plaintiff, a citizen of North Carolina, has brought suit in federal court alleging alienation of affections and criminal conversation with jurisdiction based on diversity of citizenship between the parties. In this motion, the defendant, a citizen of Georgia, contends that this case should be dismissed because these actions are subject to the domestic relations exception to federal court jurisdiction. This court is of the opinion that the motion should be granted.

The federal courts have long recognized the domestic relations exception to diversity jurisdiction. The courts have adhered to a continuing policy of avoiding domestic relations cases and have disclaimed jurisdiction over "the whole subject of husband and wife, parent and child." *The Domestic Relations Exception to Diversity Jurisdiction*, 83 Colum.L.Rev. 1824, *citing In re Burrus*, 136 U.S. 586, 10 S.Ct. 850, 34 L.Ed. 1500 (1890). Therefore, this court will not expand the limits of its jurisdiction to include an area of such strong state concern:

> In *Crouch v. Crouch*, 566 F.2d 486, 487 (5th Cir.1978), the leading Fifth Circuit case in this area, we acknowledged this fact and gave as reasons for the federal judiciary's traditional refusal to exercise diversity jurisdiction in domestic relations cases: "the strong state interest in domestic relations matters, the competence of state courts in settling family disputes, the possibility of incompatible federal and state court decrees in cases of continuing judicial supervision by the state, and the problem of congested dockets in federal courts."

*Jagiella v. Jagiella*, 647 F.2d 561, 564 (5th Cir.1981).

The courts have begun to examine the substance of the actual claim involved before determining whether to invoke the domestic relations exception. Such an examination must occur in order to determine if the suit presents "any true domestic relations issues." *Wasserman v. Wasserman*, 671 F.2d 832 (4th Cir.1982). As the court in *Jagiella* stated:

> Since tort and contract actions are technically outside the field of domestic relations, the courts could properly exercise jurisdiction in such cases. However, recent authority, while sparse, seems to favor a broader inquiry into the nature of the claim rather than resolution of the issue by technical appellation. The general inquiry is whether hearing the claim will necessitate the court's involvement in domestic issues, i.e., whether it will require inquiry into the marital or parent-child relationship.

*Jagiella*, 647 F.2d at 565.

The case at bar is one which inherently involves family relations. In order to prevail under North Carolina law on his alienation of affections claim, plaintiff must prove that he and his wife were legally and happily married, that a genuine love and affection existed between them, that such love and affection was wrongfully or illegally alienated and destroyed, and that such alienation was caused by the defendant. *Litchfield v. Cox*, 266 N.C. 622, 146

S.E.2d 641 (1966). Plaintiff's criminal conversation claim requires that he establish a legal marriage between him and his wife, sexual intercourse between defendant and plaintiff's wife during the marriage, and absence of consent or connivance on the part of the plaintiff. *Sebastian v. Klutz*, 6 N.C.App. 201, 170 S.E.2d 104 (1969). By the very nature of these claims, an extremely in depth inquiry would have to be made into the marriage relationship itself. Such an inquiry would be an inappropriate intrusion into an area which has previously been exclusively reserved for the states.

In the past, some questions have arisen as to the breadth of the domestic relations exception. However, it is now clear that the exception must be read as broadly as possible while remaining within the bounds of fairness:

> Overcrowded dockets in federal courts have also contributed to a desire to read broadly the domestic relations exception to federal diversity jurisdiction. *See, e.g., Cherry v. Cherry*, 438 F.Supp. 88, 90 (D.Md.1977) ("[T]he Court is unwilling to increase the workload of this already overburdened court by ignoring a rule that has existed for over 100 years without any intimation of Congressional disapproval."); *Thrower v. Cox*, 425 F.Supp. [570] at 573 ("The field of domestic relations is so vexatious, time-consuming and specialized that virtually every state in the Union has established a separate system of family courts to prevent their own trial courts from being overburdened. As it has done consistently in the past, the federal court system should allow them that dubious honor exclusively.").

*Cole v. Cole*, 633 F.2d 1083, 1088 (4th Cir. 1980).

The court is of the opinion that the defendant's motion to dismiss for lack of subject matter jurisdiction should be granted.

The court will enter an order simultaneously herewith dismissing this action.