Scott Kevin CUDMORE, Appellant,

v.

Elijah Glenn HOWELL, II, Virginia C. Howell, and Elijah Glenn Howell, III, Appellees.

No. 5:98–CV–815–H.

United States District Court, E.D. North Carolina, Western Division.

March 24, 1999.

M. Ryan Dyson, Layton, Dyson & Carraway, Raleigh, NC, for appellant.

R. Bradley Miller, Raleigh, NC, for Appellees.

## ORDER

HOWARD, District Judge.

This matter is before the court on appeal from an order entered by Bankruptcy Judge A. Thomas Small, holding that a North Carolina judgment against appellant is not dischargeable and granting summary judgment in favor of appellees. Both parties have filed briefs with the court and the matter is ripe for ruling.

## STATEMENT OF THE CASE

Appellees, Elijah Glen Howell II and Virginia C. Howell (the "Howells") were

employees of appellant, Scott Kevin Cudmore ("Cudmore"). Cudmore provided a group health insurance policy to the Howells as part of their employment which covered their son Elijah Glen Howell III. Cudmore withheld a portion of the Howells' wages to pay the premiums for the insurance policy.

Cudmore canceled the policy and informed the Howells.[1] The Howells deny that Cudmore ever informed them of the insurance cancellation. After Cudmore canceled the Howells' insurance, the Howells' son was involved in an automobile accident in which he suffered injuries that would have been covered by the insurance had it been in effect.

In August 1995, the Howells brought an action against Cudmore in North Carolina Superior Court. Cudmore asked for and received an extension of time to file an answer and later timely filed an answer through his attorney. In December 1995, Cudmore responded to requests by the Howells for production of documents. Then for the next several months, Cudmore engaged in settlement negotiations with the Howells. The parties agreed to a tentative settlement, but the agreement fell through when Cudmore failed to make payments required by the agreement. After settlement negotiations fell apart, Cudmore's attorney withdrew from representation and provided an address to the Howells where they could serve Cudmore as the lawsuit continued. Cudmore failed to attend a properly noticed deposition, but he did file another answer. The Howells moved for sanctions in December 1996. The superior court granted sanctions, struck Cudmore's answer and granted the Howells a default judgment in February 1997. In January 1998, after a hearing[2] on the Howells' evidence of damages, the court granted the Howells $27,297.58 in

compensatory damages and $54,595.16 in punitive damages.

The North Carolina Superior Court denied Cudmore's appeal for relief from the default judgment in April 1998. The superior court found that Cudmore failed to advise counsel for the Howells of any address changes or failed to provide a proper address; that when he filed his *pro se* answer he failed to include any address on the cover sheet, which specifically provides for any change in address; that he made no contact with the court or the plaintiffs for over one year; and, that he did not give the action the attention that a person of ordinary prudence gives his important business. Cudmore did not appeal the decision of the superior court.

Cudmore filed a bankruptcy petition pursuant to Chapter 7 of the Bankruptcy Code in May 1998. He listed the Howells' claim against him in Schedule F filed with the petition. The Howells filed a complaint with the bankruptcy court in June 1998 to determine the dischargeability of their claim against Cudmore pursuant to 11 U.S.C. § 523(a)(4). Cudmore filed a motion to dismiss the complaint and also filed an answer to the complaint. The Howells then filed a motion for summary judgment based on the state court judgment. On August 27, 1998, the Howells filed a motion to amend their complaint to include, as ground for non-dischargeability, 11 U.S.C. § 523(a)(6). Cudmore objected to the motion on August 31, 1998, the same day Judge Small held a hearing on the Howells' summary judgment motion.

On September 17, 1998, Judge Small granted Cudmore's motion to dismiss the Howells' § 523(a)(4) claim but granted summary judgment to the Howells on their § 532(a)(6) claim. Judge Small held that the state court default judgment precluded

---

1. The facts in a summary judgment motion must be viewed in a light most favorable to the nonmoving party. Judge Small's recitation of the facts accepts the Howells' assertion that they were not informed of the cancellation.

2. Cudmore failed to attend either the hearing on February 10, 1997 or the hearing on January 12, 1998.

relitigation of the issue of whether Cudmore's actions were malicious and willful and therefore, the Howells' judgment against Cudmore was not dischargeable.

Cudmore filed an appeal to this court pursuant to 28 U.S.C. § 158.[3] The issues presented on appeal are whether the state court judgment precludes litigation of the willfulness and maliciousness of the injury to the Howells, and if it does, whether the state court judgment satisfies the statutory requirement of 11 U.S.C. § 523(a)(6) that the injury be willful and malicious.

Also before the court is the Howells' motion to dismiss Cudmore's appeal for failure to timely file a brief with the court. The court will first address the Howells' motion to dismiss the appeal and will then discuss the issue preclusive effect of the state court default judgment and the dischargeability of the judgment pursuant to 11 U.S.C. § 523(a)(6).

## I. Standard of Review

■ The court will not set aside any findings of fact by the bankruptcy court unless they are clearly erroneous, *See* Fed. R.Bankr.P. 8013 (West 1998), but a bankruptcy court's conclusions of law are reviewed *de novo*. *See In re Bryson Properties, XVIII,* 961 F.2d 496, 499 (4th Cir. 1992).

## II. Appellees' Motion To Dismiss Pursuant to Fed.R.Bankr.P. 8009

■ Appellees filed a motion to dismiss pursuant to Fed.R.Bankr.P. 8009, due to Cudmore's failure to file a timely brief with the court and with appellees. Rule 8009 requires an appellant to serve and file his brief within 15 days after entry of appeal on the docket. *See* Fed.R.Bankr.P. 8009(a)(1). Appellant's appeal was docketed on October 27, 1998, but he did not file anything until December 23, 1998, when he

filed a motion to extend time to file his brief.

After the appeal was docketed on October 27, the clerk mailed to Cudmore a notice of docketing and of the deadline for filing his brief. Cudmore failed to inform his attorney that he had received this notice. Cudmore's apparent lack of interest in his appeal, demonstrated by his failure to inform his attorney of a notice sent to him by a federal court, must be counterbalanced with the practice of the district court to serve notice upon the party's attorney, rather than the party. Therefore, because Cudmore's attorney never received notice of docketing, and because of the diligence of Cudmore's attorney in filing a motion for extension of time to file a brief with the court after being made aware of the October docketing, Appellees' motion to dismiss for failure to timely file a brief is DENIED.

## III. Issue Preclusive Effect of the State Court Judgment

■ A party is precluded from relitigating an issue "decided previously in judicial or administrative proceedings provided the party against whom the prior decision was asserted enjoyed a full and fair opportunity to litigate that issue in a prior proceeding." *Hagan v. McNallen,* 62 F.3d 619, 624 (4th Cir.1995). This principle applies to bankruptcy proceedings. *See Grogan v. Garner,* 498 U.S. 279, 284 & n. 11, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). When a federal court considers the issue preclusive effect of a state court judgment, it must apply the law of the forum state regarding issue preclusion. *See Hagan,* 62 F.3d at 624. The forum state is North Carolina; therefore, the court must apply North Carolina's law on issue preclusion.

---

3. Appellant is reminded that all pleadings motions and documents filed with the court must comply with Local Rule 3.06(a). The court will not consider future filings not complying with the local rules. *See, e.g., Steingress v. Steingress,* 350 N.C. 64, 511 S.E.2d 298 (1999).

## A. North Carolina Law on Issue Preclusion

■ In North Carolina, issue preclusion is subject to the following requirements: (1) same issue as prior action; (2) the issue was raised and actually litigated; (3) the issue was material and relevant to prior action; (4) and, the issue was necessary to the final judgment. *See King v. Grindstaff,* 284 N.C. 348, 358, 200 S.E.2d 799, 806 (1973). If the state court's judgment against Cudmore meets the requirements of issue preclusion regarding the issues of willfulness and maliciousness, then Cudmore cannot relitigate those issues and the Howells are entitled to summary judgment as granted by the bankruptcy court.

## B. Effect of North Carolina Law on Issue Preclusion

### 1. Same Issue

■ North Carolina Superior Court Judge W. Osmond Smith entered default judgment against Cudmore as a sanction for his failure to appear at a deposition. Judge Smith found that Cudmore's actions in canceling insurance were a conscious and intentional disregard of the Howells' rights. He concluded that Cudmore had breached a fiduciary duty to the Howells, had perpetrated a fraud upon the Howells and that aggravating circumstances existed such that the Howells were entitled to an award of punitive damages. Punitive damages are only awarded "where the conduct of the defendant was willful, aggravated, malicious, or of a wanton character." *Horner v. Byrnett,* 511 S.E.2d 342 (N.C.App.1999) (quoting *Sebastian v. Kluttz,* 6 N.C.App. 201, 220, 170 S.E.2d 104, 116 (1969)). Therefore, the same issues of willfulness and maliciousness were litigated in the state proceeding.

### 2. Actually Litigated

The issues must have been actually litigated in the proceeding claimed to have preclusive effect. Cudmore asserts that a default judgment does not constitute actual litigation and as support for his assertion, points to federal law. However, the proper inquiry is whether a default judgment constitutes actual litigation under North Carolina law. *See* 28 U.S.C. § 1738; *Allen v. McCurry,* 449 U.S. 90, 96, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980) ("Though the federal courts may look to the common law or to the policies supporting res judicata and collateral estoppel in assessing the preclusive effect of decisions of other federal courts, Congress has specifically required all federal courts to give preclusive effect to state court judgments whenever the courts of the State from which the judgments entered would do so …"). Unfortunately, the answer to this question is not readily apparent from North Carolina law.

■ North Carolina courts have not addressed the issue of whether a default judgment constitutes "actual litigation." The cases cited by appellees are not convincing. However, North Carolina has recognized the collateral estoppel burden shifting propounded by *Moore's Federal Practice. See Miller Building Corporation v. NBBJ North Carolina, Inc.,* 129 N.C.App. 97, 497 S.E.2d 433, 435 (1998). The party seeking to apply issue preclusion has the burden to show "with clarity and certainty what was determined by the prior judgment." *Id.* (quoting 18 Moore's Federal Practice § 132.05(1)). "The party opposing issue preclusion has the burden 'to show that there was no full and fair opportunity to litigate the issues in the first case.'" *Id.* As discussed above, appellees have met their burden of showing what issues the default judgment determined.

■ The appellant has not shown that the default judgment deprived him of a full and fair opportunity to litigate the issue of his conduct in canceling appellees' insurance. Rather, the facts point to a contrary conclusion. Cudmore initially defended against the Howells' state lawsuit, he engaged in extensive negotiations with the

Howells, released his attorney and filed an answer, *pro se.* In short, Cudmore had the opportunity to fully and fairly litigate the claim which resulted in a default judgment. He has not met his burden of showing no full and fair opportunity to litigate his prior claim. *See, e.g., In re Bush,* 62 F.3d 1319 (11th Cir.1995). Therefore, the issues were actually litigated under North Carolina law.

### 3. Material and Relevant to Prior Action

One cannot be found to have perpetrated a fraud upon another without intentional acts. Punitive damages are only awarded when actions of one party are willful and malicious. Therefore, the issues of malice and intent were material to the prior action.

### 4. Necessary to the Final Judgment

For the same reasons stated above, the superior court's finding of willfulness and maliciousness was necessary to the final judgment. Therefore, the bankruptcy judge properly found that collateral estoppel applied to bar relitigation of Cudmore's conduct.

### IV. Dischargeability of the State Court Judgment Pursuant to 11 U.S.C. § 523(a)(6)

The Supreme Court of the United States addressed the requirements for discharge under § 523(a)(6) in *Kawaauhau v. Geiger,* 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). Section 523(a)(6) provides that a debt "for willful and malicious injury by the debtor to another" is not dischargeable. 11 U.S.C. § 523(a)(6). To qualify as nondischargeable the debt cannot arise from a reckless or negligent injury, but must be willful and malicious. *See Kawaauhau,* 523 U.S. at ——, 118 S.Ct. at 975. The North Carolina Superior court found that Cudmore's actions were both willful and malicious. Therefore, the state court judgment satisfies the statutory requirement of 11 U.S.C. § 523(a)(6) that the injury be willful and malicious. Because

collateral estoppel bars the bankruptcy court from relitigating the issue of Cudmore's actions, the debt is not dischargeable and the bankruptcy court's order is AFFIRMED.

### CONCLUSION

For the above stated reasons, appellees' motion to dismiss is DENIED and the bankruptcy court's order is AFFIRMED. The clerk is directed to close this case.