SEAWELL, J., dissenting.
ERVIN, J., concurs in dissent.
Civil action to recover damages for criminal conversation with and alienation of the affections of plaintiffs' mother, heard on demurrer. *Page 174 
Plaintiffs are the infant children of their next friend and his wife, Estelle Henson. They allege in substance that they and their parents lived happily together in a new home; that defendant, for the purpose of seducing their mother and alienating her affections, paid constant court to her; that as a result of his improper attentions she was induced to leave home on various occasions and go to other cities where she engaged in illicit relations with him; that he thereby alienated the affections of their mother, goaded their father into leaving home, and caused them to lose the companionship, guidance, and care of both their father and mother and brought disgrace upon them to their great hurt and damage. They allege their mother, through the inducement and allurement of defendant, was absent from home from time to time, but they do not allege that she has abandoned them or her home or that she does not still live with them.
The defendant demurred for that the complaint fails to state a cause of action. The demurrer was overruled and defendant appealed.
May children, acting through their father as next friend, maintain an action against a third party for damages for wrongfully disrupting the family circle and thereby depriving them of the affection, companionship, guidance, and care of their parents? This is the question posed for decision. We are constrained to answer in the negative.
There is no statute in this State creating a cause of action such as the plaintiffs here seek to assert. If it exists, the basis therefor must be found in the common law.
So much of the common law as has not been abrogated or repealed by statute is in full force and effect within this State. G.S. 4-1. But an action such as this was not known to the common law. The mutual advantages, privileges, and responsibilities of members of the family circle were deemed to be social rather than legal. With few exceptions, loss of these benefits, either through an act of a member of the family group or of a third party, could not be recompensed through an action at law.
One spouse could not sue the other, Scholtens v. Scholtens,230 N.C. 149, and a child could not maintain an action in tort against his parent. Small v. Morrison, 185 N.C. 577, 118 S.E. 12. The husband could sue a third party for criminal conversation with, and the alienation of the affections of, his wife; but the action was grounded on the common law conception of the husband's property right in the person of his wife. *Page 175 
"The peace of society, and of the families composing society, and a sound public policy, designed to subserve the repose of families and the best interests of society, forbid to the minor child a right to appear in court in the assertion of a claim to civil redress for personal injuries suffered at the hands of the parent." Small v. Morrison, supra.
The mutual rights and privileges of home life grow out of the marital status. Affection, guidance, companionship, loving care, and domestic service constitute, in part, the mother's contribution to the happiness and well-being of the family circle. Such obligations on her part are not legal in nature and may not be made the subject of commerce and bartered at the counter. Ritchie v. White, 225 N.C. 450, 35 S.E.2d 414.
Here there is no allegation of abandonment. If the mother is guilty of nonsupport, the statute provides a remedy, Chap. 810, Session Laws 1949, and this remedy is exclusive. Allen v. Hunnicutt, 230 N.C. 49.
If the defendant seduced the mother and thereby caused the father to leave home, the cause of action for the resulting damages rests in the father and not the children. If the father abandoned his children, whatever the cause, he is the one who must answer therefor.
The demurrer admits that plaintiffs have been deprived of the companionship, guidance, love, and affection of their mother. This was brought about by the act of the mother in withdrawing these incidents of family life from them. In so doing she has committed no legal wrong for which redress may be had in a court of law.
A child may expect its mother to make these contributions to the home and confidently anticipate that she will ever maintain and preserve her chastity. Yet it may not be said that when she gave it birth, she thereby assumed a legal obligation not only to give it love and affection but also to guard with jealous care the purity and uprightness of character the child so trustfully expects of its mother. These are matters within her keeping. The measure of their contribution is controlled by her willingness and capacity.
Since the mother, who is a free agent, committed no legal wrong for which redress may be had in a court of law, it cannot be said that the defendant, who allegedly induced her to be remiss in her domestic duties, incurred any greater liability than the law attaches to her act.
To hold otherwise would mean that every time a person persuades or induces a mother to engage in other activities to such an extent as to cause her to neglect her children, he commits a tort for which he may he compelled to respond in damages. The only difference lies in the gravity of the wrong and the extent of the damage.
The problem here, in its last analysis, is sociological rather than legal. No one would question the fact that a child has an interest in all the benefits of the family circle. Nor may it be denied that the legislative *Page 176 
branch of the government may give this interest such legal sanction as would make the invasion or destruction thereof a legal wrong. So far, it has not deemed it wise to do so.
It is contended, however, that there is no statutory prohibition against this type of action; that the integrity of the relations and social considerations demand judicial recognition of defendant's liability for enticing plaintiffs' mother from the family home. But the social considerations and the alleged necessity or advisability of protecting the family relation by upholding the action here contended for are arguments more properly addressed to the legislative branch of the government.
"The `excelsior cry for a better system' in order to keep step with the new conditions and spirit of a more progressive age must be made to the Legislature, rather than to the courts." Gowin v. Gowin, 264 S.W. 529; Garza v. Garza, 209 S.W.2d 1012. Our province is to enforce the law as we find it and to determine the existence or nonexistence of such a cause of action by the state of the law as it now exists. In doing so, we are not permitted to find a way out for plaintiffs by engaging in judicial empiricism.
The asserted cause of action was not known to the common law. It has no statutory sanction. It is not for the courts to convert the home into a commercial enterprise in which each member of the group has a right to seek legal redress for the loss of its benefits. It follows, therefore, that the court below erred in overruling the demurrer.
This conclusion is in accord with the decisions in other jurisdictions. Morrow v. Yannantuono, 273 N.Y.S. 912; Rudley v. Tobias, 190 P.2d 984; McMillan v. Taylor, 160 F.2d 221; Taylor v. Keefe, 56 A.2d 768; Pound, Individual Interests in the Domestic Relations, 14 Mich. L. R. 177, at p. 185; 2 Cooley, Torts, 4th Ed., 41, sec. 174; Prosser on Torts 936; Vernier, American Family Laws, Vol. IV, p. 480, sec. 267.
There are two cases contra which sustain the contention of plaintiffs: Daily v. Parker, 152 F.2d 174, 162 A.L.R. 819, and Johnson v. Luhman,71 N.E.2d 810. In each of these cases, however, the court concedes that it is creating a cause of action not theretofore known to the law. This is a procedure we are not privileged to follow.
The judgment below is
Reversed.