DONALD RAY NUNN, Plaintiff v. CLAY ALLEN, Defendant

No. COA01-1570

(Filed 17 December 2002)

## 1. Alienation of Affections; Criminal Conversation— common law tort—recognized by North Carolina Supreme Court

The Court of Appeals has no authority to abolish the torts of alienation of affection and criminal conversation even though defendant contends the torts are archaic, antiquated, and offensive to the concept of feminine equality, because: (1) neither tort is a statutory creation, and both emanate from the common law and have been recognized by our Supreme Court; and (2) the Court of Appeals has no authority to overrule decisions of our Supreme Court.

## 2. Evidence— exclusion of statements made to defendant by plaintiff's wife—harmless error

The trial court did not err in an alienation of affections and criminal conversation case by excluding testimony concerning statements made to defendant by plaintiff's wife concerning her relationship with plaintiff, because some of the excluded evidence was later admitted through the testimony of plaintiff's wife, rendering harmless its exclusion during defendant's testimony, and defendant made no offer of proof as to the other testimony.

## 3. Appeal and Error— preservation of issues—failure to cite authority—general objections—failure to show prejudice

Although defendant contends the trial court erred in an alienation of affections and criminal conversation case by permitting plaintiff to cross-examine defendant concerning property owned by defendant's father and to cross-examine plaintiff's wife concerning the pendency of charges against her for embezzlement from her place of employment, this assignment of error is dismissed because: (1) defendant did not preserve this issue for appeal by failing to cite any authority and by interposing only general objections at trial; and (2) defendant has neither argued nor demonstrated that he was prejudiced by the challenged cross-examinations.

**4. Child Support, Custody, and Visitation— support—amount**

The trial court did not err in an alienation of affections and criminal conversation case by permitting plaintiff to elicit testimony from an employee in the child support section of superior court concerning the amount of child support which would have been required in 1997 of a person earning the same income as plaintiff's wife earned in 1996, because: (1) contrary to defendant's assertion that N.C.G.S. § 8C-1, Rule 702 was violated, the witness was neither offered nor accepted as an expert witness; (2) the witness testified that she had calculated the child support obligation by applying the applicable child support guidelines to the income as shown by the W-2 form of plaintiff's wife and by determining the presumptive amount of child support; and (3) defendant failed to show prejudice.

**5. Evidence— redirect examination—suitcase of drugs— harmless error**

The trial court did not commit prejudical error in an alienation of affections and criminal conversation case by admitting plaintiff's testimony during redirect examination that his wife had told him she had seen a suitcase of drugs at defendant's residence because, although it does not appear that defendant's counsel opened the door for the challenged testimony and there is no other basis for its admission, in light of the other evidence this single statement would not have been likely to affect the jury's verdict or award.

**6. Alienation of Affections— directed verdict—judgment notwithstanding verdict—sufficiency of evidence—post-separation conduct admissible**

The trial court did not err by denying defendant's motion for a directed verdict and for judgment notwithstanding the verdict in an action for alienation of affection, because: (1) there was evidence that plaintiff and his wife had a loving marriage until 1996; (2) postseparation conduct is admissible and relevant to corroborate evidence of preseparation conduct, and the evidence of postseparation conduct here provided strong circumstantial evidence explaining and corroborating defendant's preseparation conduct; (3) defendant admitted to having sexual intercourse with plaintiff's wife in October 1997 and continuing a sexual relationship with her thereafter; and (4) a jury could find from all the evidence, without having to engage in speculation, that defend-

ant's conduct was the effective cause of the wife's alienation of affection.

**7. Alienation of Affections— motion to set aside verdict— motion for new trial—sufficiency of evidence—preseparation misconduct**

The trial court did not abuse its discretion by denying defendant's N.C.G.S. § 1A-1, Rule 59 motion to set aside the compensatory damage verdict for alienation of affection and by failing to grant a new trial, because there was sufficient evidence of preseparation misconduct on defendant's part.

**8. Criminal Conversation— sufficiency of evidence—postseparation sexual relationship—separation agreement**

The trial court did not err by submitting the charge of criminal conversation to the jury, because: (1) plaintiff presented substantial evidence, and defendant admitted, that defendant had sexual intercourse with plaintiff's wife while she was married to plaintiff; (2) a claim for criminal conversation may be based solely upon postseparation sexual relations; (3) the existence of a separation agreement between plaintiff and plaintiff's wife does not shield defendant from liability for criminal conversation based on his postseparation sexual relationship with plaintiff's wife; and (4) the cited provision of the separation agreement does not, without evidence of plaintiff's prior knowledge and approval of defendant's sexual intercourse with plaintiff's wife while she was married to plaintiff, establish his consent to such intercourse.

**9. Criminal Conversation— motion to set aside verdict— motion for new trial—sufficiency of evidence**

The trial court did not abuse its discretion by denying defendant's N.C.G.S. § 1A-1, Rule 59 motion to set aside the compensatory damage verdict for criminal conversation and by failing to grant a new trial, because plaintiff presented substantial evidence from which a jury could have determined that he experienced mental anguish and humiliation due to the affair between his wife and defendant including: (1) the testimony of plaintiff's father as to plaintiff's depressed mental state; (2) plaintiff's own testimony that he began consulting with his pastor to help deal with his emotional turmoil; and (3) even up to the week before trial, plaintiff continually tried to contact his former wife by leaving notes on her car asking for a chance to speak with her again.

**10. Alienation of Affections— punitive damages—sexual relationship—laughter about situation—knowledge affecting children**

The trial court did not err by awarding punitive damages for an alienation of affection claim, because: (1) evidence of sexual relations between defendant and plaintiff's spouse has been held to satisfy the necessary element of aggravation, and defendant admitted to sexual relations with plaintiff's wife during her marriage to plaintiff; (2) defendant's laughter about the situation has been held to be evidence of malice, and there was evidence that defendant laughed at plaintiff and his father when they spoke with defendant about his relationship with plaintiff's wife; and (3) knowledge that the relationship would harm plaintiff's children has been a factor showing malice, and there was evidence that plaintiff's son told defendant to stay away from his mother.

**11. Criminal Conversation— punitive damages—same sexual misconduct sufficient**

The trial court did not abuse its discretion by denying defendant's motion for a new trial on the punitive damages issue for a criminal conversation claim, because: (1) the same sexual misconduct necessary to establish the tort of criminal conversation may also sustain an award of punitive damages; and (2) there was sufficient evidence of defendant's sexual intercourse with plaintiff's wife during her marriage to plaintiff to support a verdict for plaintiff.

**12. Alienation of Affections— jury instructions—active role—preseparation misconduct**

The trial court did not err by instructing the jury on alienation of affection even though the court refused to give defendant's requested instruction that to be liable defendant must have had an active role in alienating the wife's affection and that any claim must be based on preseparation conduct, because: (1) the instruction given by the trial court established that there must exist some wrongful action on the part of defendant leading to the alienation; (2) there is no indication defendant ever specifically requested that the trial court instruct the jury it was only to consider preseparation conduct or that defendant presented the trial court with any authority in support of such a position; and (3) the fact that the jury had previously been given a different instruction is not grounds for asserting prejudice where the trial

NUNN v. ALLEN

[154 N.C. App. 523 (2002)]

court in this case specifically instructed the jury that it was to disregard the prior instruction.

**13. Alienation of Affections— jury instructions—compensatory damages**

Although defendant contends the trial court erred by instructing the jury as to compensatory damages for alienation of affection that it could consider the degree to which plaintiff and his wife's relationship was destroyed in addition to plaintiff's mental anguish, shame, humiliation, loss of reputation and support, and any other adverse effect on the quality of the marital relationship, this assignment of error is overruled because: (1) the Court of Appeals previously rejected defendant's contentions as to the sufficiency of the evidence; and (2) defendant failed to cite any authority to support his argument that the trial court's instruction was otherwise erroneous.

**14. Criminal Conversation— jury instruction—waiver or consent**

The trial court did not err on the claim of criminal conversation by instructing the jury that it should not consider whether plaintiff and his wife had separated before the sexual intercourse occurred, because the plaintiff's separation agreement with his wife did not constitute a waiver or consent for sexual intercourse between the wife and another person.

**15. Criminal Conversation— jury instruction—factors**

The trial court did not err by instructing the jury on factors for determining an amount of compensatory damages to award on the criminal conversation claim, because: (1) there was evidence in the record from which the jury could find that plaintiff suffered loss of consortium, mental anguish, or humiliation as a result of defendant's sexual relationship with plaintiff's wife; (2) the instruction allowed the jury to award only nominal damages if the factors were not present; and (3) defendant cites no law supporting his attack on the instruction.

**16. Damages and Remedies— punitive damages—jury instruction**

The trial court did not err in an alienation of affections and criminal conversation case by instructing the jury on the issue of punitive damages, because: (1) the trial court instructed the jury that punitive damages were within its discretion to award and

that the amount should bear a reasonable relationship to the sum reasonably needed to punish defendant and deter others; (2) defendant cited no authority for alleged violations of his constitutional rights or for why the standard articulated by the judge was not constitutionally adequate; and (3) there is no indication in the record that defendant objected to the instructions on punitive damages or submitted a proposed instruction on the issue.

Appeal by defendant from judgment entered 9 May 2001 by Judge F. Fetzer Mills in Richmond County Superior Court. Heard in the Court of Appeals 17 September 2002.

*Henry T. Drake for plaintiff-appellee.*

*Katherine E. Jean for defendant-appellant.*

MARTIN, Judge.

Plaintiff brought this action seeking compensatory and punitive damages from defendant, alleging that defendant had alienated the affection of plaintiff's wife and had engaged in criminal conversation with her. Defendant denied the allegations.

Briefly summarized, the evidence at trial tended to show that plaintiff Donald Nunn married Vickie O'Brien Nunn, now Vickie Woods (hereinafter "Mrs. Nunn"), on 1 July 1978; three sons were born to the marriage. Mrs. Nunn moved out of the couple's home in April 1997. Plaintiff and Mrs. Nunn signed a separation agreement on 8 September 1997, and were divorced on 17 August 1998.

Evidence regarding the state of the marriage prior to the couple's separation, as well as the cause and date of onset of the deterioration of the marriage, is conflicting. Mrs. Nunn had been employed for several years at Allen Brothers Timber Company ("Allen Brothers") as secretary of the corporation. Defendant is also employed by Allen Brothers; his father is president of the company and defendant is a vice-president. Plaintiff introduced evidence tending to show that defendant spent time with Mrs. Nunn at work, after work, and on the weekends before and during the couple's separation, and that the corporation helped Mrs. Nunn buy a new car and provided a residence for her grandmother, into which Mrs. Nunn moved after her separation from plaintiff. Plaintiff testified that in September 1997, he went, with his father and Herman Searcey, to defendant's residence and, looking into a window, observed Mrs. Nunn and defendant kissing; as

he continued to watch, it appeared to him that Mrs. Nunn placed her head between the defendant's legs as though she was performing oral sex upon him. Mr. Searcey testified that he saw Mrs. Nunn performing oral sex upon defendant. The next day, plaintiff's attorney prepared a separation agreement which plaintiff and Mrs. Nunn signed on 8 September 1997.

Through the testimony of Mrs. Nunn and other witnesses, there was evidence that plaintiff had accused or suspected Mrs. Nunn of having affairs with other men during their marriage. Mrs. Nunn testified that "rumors" circulated that her youngest son, who was born in 1991, was, in fact, fathered by defendant's father Bruce Allen or his cousin Steve Allen, Jr. Plaintiff testified that when he confronted Steve Allen, Jr., about these rumors, Steve said, "Clay is your man."

Mrs. Nunn and defendant both testified that they had sexual intercourse for the first time in or about October 1997; Mrs. Nunn testified that it occurred after she and plaintiff had signed the separation agreement. In addition, plaintiff offered evidence that defendant, by his failure to respond to plaintiff's Request for Admissions dated 5 May 1999, had admitted to a sexual relationship with Mrs. Nunn "during the year of 1997" and that such relationship continued to the date of the Request for Admissions.

There was evidence that plaintiff had engaged in an extra-marital relationship with a co-worker in or about 1996. Although there was no evidence that the relationship was sexual, the two often had lunch together, and were seen by witnesses in physically close situations in plaintiff's truck and office. In the fall of 1996, Mrs. Nunn found greeting cards the co-worker had given to plaintiff. Mrs. Nunn and other witnesses testified that the cards appeared to be of a romantic nature and that Mrs. Nunn was upset by their discovery. Mrs. Nunn testified that she stopped sleeping in the same bed with her husband because he would not bathe after coming home from his job working on cars and before getting into bed, and that she was generally disgusted with him and other things going on in her life. She testified that defendant had nothing to do with her separation from plaintiff.

The jury answered the issues of alienation of affection and criminal conversation in favor of plaintiff and awarded compensatory damages of $50,000 and punitive damages of $50,000. Defendant's post-verdict motions were denied and the trial court entered judgment on the verdict. Defendant appeals.

NUNN v. ALLEN

[154 N.C. App. 523 (2002)]

In his brief to this Court, defendant argues, in support of his twenty-eight assignments of error, (I) the common law claims for alienation of affection and criminal conversation should be judicially abolished; (II) the trial court erred in various of its evidentiary rulings; (III) the trial court erred in denying his motions for directed verdict, for judgment notwithstanding the verdict, for a new trial, and in entering judgment on the verdict, because the evidence was insufficient to support a judgment in plaintiff's favor on any theory; and (IV) the trial court erred in its instructions to the jury. After careful review of defendant's arguments, we decline to disturb the verdict or the judgment.

I.

[1] Defendant asserts that the torts of alienation of affection and criminal conversation are "archaic, antiquated, and offensive to the concept of feminine equality," and asks that we abolish the torts in North Carolina. Neither tort is a statutory creation; both emanate from the common law and have been recognized by our Supreme Court. *See, e.g., Henson v. Thomas*, 231 N.C. 173, 56 S.E.2d 432 (1949). This Court has no authority to overrule decisions of the North Carolina Supreme Court. *Cannon v. Miller*, 313 N.C. 324, 327 S.E.2d 888 (1984), *vacated on other grounds*, 313 N.C. 324, 327 S.E.2d 888 (1985); *Hutelmyer v. Cox*, 133 N.C. App. 364, 514 S.E.2d 554, *disc. review denied*, 351 N.C. 104, 541 S.E.2d 146 (1999).

II.

[2] By six assignments of error, defendant contends the trial court erred in various rulings admitting or excluding evidence. First, defendant contends the trial court erred by excluding his testimony concerning statements made to him by Mrs. Nunn concerning her relationship with plaintiff. Defendant argues the evidence was relevant to show his state of mind and beliefs and, therefore, was relevant to the issue of the existence or absence of malice on his part, an element necessary to prove alienation of affection and also necessary for an award of punitive damages. However, some of the excluded evidence was later admitted through the testimony of Mrs. Nunn, rendering harmless its exclusion during defendant's testimony. *See State v. Richardson*, 341 N.C. 658, 462 S.E.2d 492 (1995) (any error in exclusion of evidence harmless where evidence of same import admitted through the testimony of other witnesses). Defendant made no offer of proof as to the other testimony he contends was erroneously excluded by the trial court. N.C. Gen. Stat. § 8C-1, Rule 103(a)(2)

(error may not be predicated upon a ruling excluding evidence unless substance of evidence was apparent or made known to trial court by offer).

[3] Defendant also assigns error to the trial court's rulings permitting plaintiff to cross-examine him concerning property owned by his father and to cross-examine Mrs. Nunn concerning the pendency of charges against her for embezzlement from Allen Brothers Timber Company. On appeal, defendant argues, without citing any authority, the evidence was not relevant. At trial, however, he interposed only general objections and, as such, did not clearly present the alleged error to the trial court as required by G.S. § 8C-1, Rule 103(a)(1). The rulings, therefore, have not been preserved for appeal. *See State v. Reid*, 322 N.C. 309, 367 S.E.2d 672 (1988). In any event, defendant has neither argued nor demonstrated that he was prejudiced by the challenged cross-examinations. *See Dept. of Transportation v. Craine*, 89 N.C. App. 223, 226, 365 S.E.2d 694, 697 (1988) (appellant must show that erroneous admission of evidence "probably influenced the jury verdict"); *McNabb v. Town of Bryson City*, 82 N.C. App. 385, 346 S.E.2d 285, *review dismissed*, 319 N.C. 397, 354 S.E.2d 239 (1987).

[4] Defendant also assigns error to the trial court's rulings permitting plaintiff to elicit testimony from Vickie Daniel, an employee in the child support section of the Richmond County Clerk of Superior Court, concerning the amount of child support which would have been required in 1997 of a person earning the same income as Mrs. Nunn earned in 1996. His objections at trial were based upon relevance and lack of foundation; on appeal he argues only that there was an inadequate foundation for her testimony, citing G.S. § 8C-1, Rule 702 as the sole support for his argument. However, Ms. Daniel was neither offered nor accepted as an expert witness and the cited rule has no application here. Moreover, Ms. Daniel testified that she had calculated the child support obligation by applying the applicable child support guidelines to the income as shown by Mrs. Nunn's 1996 W-2 form and determining the presumptive amount of child support. She acknowledged that the presumptive amount would be affected by certain variables, about which she was extensively cross-examined by defendant's counsel. Defendant has shown no prejudice and this assignment of error is also overruled.

[5] Defendant next assigns error to the admission of plaintiff's testimony, during re-direct examination, that his wife had told him she "had seen a suitcase of drugs" at defendant's residence. The trial

court overruled defendant's objection to the testimony, ruling that defendant had "opened the door" for such testimony during his counsel's cross-examination of plaintiff. Our review does not reveal any cross-examination by defendant's counsel which would have "opened the door" for the challenged testimony and we find no basis for its admission. However, in light of the other evidence, we do not believe this single statement would have been likely to affect the jury's verdict or award. S*ee Dept. of Transportation v. Craine, supra.* This assignment of error is overruled.

Defendant cites no authority and advances no legal argument in support of his remaining evidentiary assignment of error. It merits no discussion and is overruled.

### III.

In his primary argument, defendant assigns error to the denial of his motions for directed verdict, judgment notwithstanding the verdict, and for a new trial, because he contends the evidence was insufficient as a matter of law to sustain a verdict in plaintiff's favor (1) for alienation of affection, (2) for criminal conversation, and (3) for punitive damages.

> A motion for directed verdict is appropriately granted only when by looking at the evidence in the light most favorable to the nonmovant, and giving the nonmovant the benefit of every reasonable inference arising from the evidence, the evidence is insufficient for submission to the jury. . . . A motion for judgment notwithstanding the verdict represents a renewal, after a verdict is issued, of a motion for directed verdict, and the standards of review for both motions are the same. . . . A trial court's decision to grant or deny a motion for directed verdict or a motion notwithstanding the verdict will not be disturbed on appeal absent an abuse of discretion.

*Crist v. Crist,* 145 N.C. App. 418, 422, 550 S.E.2d 260, 264 (2001) (citations omitted).

### Alienation of Affection

[6] Defendant contends plaintiff failed to produce sufficient evidence as to the existence of each element of the tort of alienation of affection to warrant submission of the issue to the jury. A claim for alienation of affection requires that plaintiff present evidence:

"(1) there was a marriage with love and affection existing between the husband and wife; (2) that love and affection was alienated; and (3) the malicious acts of the defendant produced the loss of that love and affection."

*Pharr v. Beck*, 147 N.C. App. 268, 271, 554 S.E.2d 851, 854 (2001) (footnote omitted). With respect to the first element, the plaintiff need not prove that he and his spouse had a marriage free from discord, only that some affection existed between them. *Brown v. Hurley*, 124 N.C. App. 377, 477 S.E.2d 234 (1996). In terms of proving that alienation of affection occurred, plaintiff need only show that his spouse's affection for him was "diminished or destroyed." *Pharr*, 147 N.C. App. at 271 n.1, 554 S.E.2d at 854 n.1. The third element requires a showing of both "malice and proximate cause." *Id.* at 271, 554 S.E.2d at 854. Malice is shown by evidence that defendant knew of the marriage and acted intentionally in a way likely to affect the marriage. *Id.* at 272, 554 S.E.2d at 854. Proximate cause does not require that defendant's acts be the sole cause of the alienation, as long as they were the "controlling or effective cause." *Heist v. Heist*, 46 N.C. App. 521, 523, 265 S.E.2d 434, 436 (1980).

Plaintiff offered substantial evidence from which a jury could find the existence of the first element. There was evidence that plaintiff and his wife had a "loving marriage" until 1996. Plaintiff testified that between 1993 and 1995, Mrs. Nunn's attention to housework and preparing family meals, as well as her interest in sexual relations with him, began to decline. She stopped attending church with plaintiff and their sons and did not want to take family trips in 1995 and 1996. In November 1996, Mrs. Nunn began sleeping separately from plaintiff and their sexual relationship ended except for one isolated incident of sexual intercourse before April 1997. In April 1997, she moved out of the marital home.

With respect, however, to the element that defendant maliciously engaged in conduct which proximately resulted in the alienation of Mrs. Nunn's affection from plaintiff, defendant argues, citing *Pharr, supra,* that a claim for alienation of affection can only be based on pre-separation conduct by defendant, and the evidence shows that any wrongful conduct by defendant only occurred after Mrs. Nunn separated from plaintiff. We disagree. There was evidence tending to show that defendant and Mrs. Nunn worked together for a number of years prior to her separation from plaintiff and that she would occasionally go to defendant's brother's ranch on weekends to ride horses and defendant would be there. The evidence also showed that Allen

Brothers Timber Company purchased a house for Mrs. Nunn's grand-mother to rent and live in, and that Mrs. Nunn moved into that resi-dence when she separated from plaintiff.

There was also evidence tending to show that after Mrs. Nunn separated from plaintiff, she would go to defendant's residence for drinks with defendant's brother and sister-in-law. Plaintiff testified that between April and September 1997, he observed Mrs. Nunn's car driving down the road to defendant's home in the late afternoon about half a dozen times. In September 1997, plaintiff and Mr. Searcey saw defendant and Mrs. Nunn hugging and kissing, and Mr. Searcey saw her performing oral sex on defendant. Under *Pharr, supra,* post-sep-aration conduct is admissible and relevant to corroborate evidence of pre-separation conduct, and the evidence of post-separation conduct here provides strong circumstantial evidence explaining and corrob-orating defendant's pre-separation conduct. In addition, defendant admitted to having sexual intercourse with Mrs. Nunn in October 1997 and continuing a sexual relationship with her thereafter. We hold that a jury could find from all the evidence, without having to engage in speculation, that defendant's conduct was the effective cause of the alienation of Mrs. Nunn's affection from plaintiff, and the trial court did not err in denying defendant's motions for directed verdict and judgment notwithstanding the verdict.

[7] Defendant also assigns error to the denial of his G.S. § 1A-1, Rule 59 motion to set aside the compensatory damage verdict for alien-ation of affection and grant a new trial. He argues on appeal that there was no evidence to support the award of compensatory dam-ages for alienation of affection and thus the trial court erred in its denial of the motion.

> In a cause of action for alienation of affections . . ., the measure of damages is the present value in money of the support, consor-tium, and other legally protected marital interests lost by [plain-tiff] through the defendant's wrong. In addition thereto, [plaintiff] may also recover for the wrong and injury done to [plaintiff's] health, feelings, or reputation.

*Sebastian v. Kluttz,* 6 N.C. App. 201, 219, 170 S.E.2d 104, 115 (1969). Defendant's argument again centers on the alleged timing of plaintiff's losses; he argues that plaintiff had already lost his sex-ual relationship with Mrs. Nunn, her companionship, household and family care, and financial support when defendant's relationship with Mrs. Nunn began. This argument, however, is premised on

defendant's contention that there was insufficient evidence of pre-separation misconduct on his part, a contention which we have rejected for the reasons stated above. The trial court did not abuse its discretion by refusing to set aside the compensatory damages award and grant defendant a new trial on this issue. *See Horner v. Byrnett*, 132 N.C. App. 323, 328, 511 S.E.2d 342, 346 (1999) (appellate court will not reverse ruling on motion for new trial without showing of an abuse of discretion " 'resulting in a substantial miscarriage of justice' ").

## Criminal Conversation

**[8]** Defendant also contends plaintiff failed to produce sufficient evidence to warrant submission of the issue of criminal conversation to the jury. The elements of the tort of criminal conversation "are the actual marriage between the spouses and sexual intercourse between defendant and the plaintiff's spouse during the coverture." *Brown v. Hurley*, 124 N.C. App. at 380, 477 S.E.2d at 237. The cause of action is based upon "the fundamental right to exclusive sexual intercourse between spouses." *Johnson v. Pearce*, 148 N.C. App. 199, 200, 557 S.E.2d 189, 190 (2001). Plaintiff presented substantial evidence, and defendant admitted, that he had sexual intercourse with Mrs. Nunn while she was married to plaintiff. Defendant argues, however, that the existence of the separation agreement between plaintiff and Mrs. Nunn provides him with at least two defenses.

First, defendant asserts there is no evidence that he had sexual intercourse with Mrs. Nunn until after she and plaintiff had executed the separation agreement in which he waived his "right to exclusive sexual intercourse" with his spouse. The separation agreement contained the following provision:

LIVING SEPARATE: Husband and Wife shall continue to live separate and apart, each at such place of residence as he or she may freely choose, free from all interference, authority and control, direct or indirect, by the other party, as fully as if each party were unmarried. Neither shall molest the other nor harass the other, nor compel nor endeavor to compel the other to cohabit or dwell with him or her.

In *Johnson v. Pierce, supra*, this Court held that a claim for criminal conversation may be based solely upon post-separation sexual relations. *See also Bryant v. Carrier*, 214 N.C. 191, 198 S.E. 619 (1938) (fact that intercourse occurs during separation of plaintiff and

spouse does not bar action for criminal conversation). Defendant attempts to distinguish *Johnson*, however, because no separation agreement existed in that case. We decline to establish such an exception.

G.S. § 52-10.1 authorizes "any married couple . . . to execute a separation agreement not inconsistent with public policy . . . ." *See also* N.C. Gen. Stat. § 52-10 (2002). Separation agreements are generally construed like any contract between two parties. *See Anderson v. Anderson*, 145 N.C. App. 453, 550 S.E.2d 266 (2001). Defendant was not a party to the separation agreement. Assuming, *arguendo*, that the provision at issue was intended by the parties to the agreement, plaintiff and Mrs. Nunn, to address their "right to exclusive sexual intercourse" with the other, the provision related only to the spouses' rights against each other, for example, a spouse's sexual relations with a third party can affect the legal rights of the spouses with respect to alimony. N.C. Gen. Stat. § 50-16.3A (2002). As a matter of law, the provision did not waive the parties' rights, with respect to third parties for purposes of a criminal conversation claim, to exclusive sexual intercourse with each other during coverture. Criminal conversation is sexual intercourse with a plaintiff's spouse during coverture. *Johnson, supra*. Notwithstanding their agreement of separation, plaintiff and his wife were still married at the time of defendant's admitted sexual relations with Mrs. Nunn in October 1997. Therefore, we hold the existence of the separation agreement between plaintiff and Mrs. Nunn does not shield defendant from liability for criminal conversation based on his post-separation sexual relationship with Mrs. Nunn.

Defendant also argues the agreement was the equivalent of plaintiff's consent for Mrs. Nunn to have sexual relations with another man, which is a viable defense to the claim of criminal conversation. *See Cannon v. Miller*, 71 N.C. App. at 465-66, 322 S.E.2d at 785-86, (plaintiff's consent is the only substantive defense to a claim for criminal conversation); *Barker v. Dowdy*, 223 N.C. 151, 25 S.E.2d 404 (1943) ("connivance" of spouse in adultery of other spouse will bar action for criminal conversation). We are aware of no authority in North Carolina to support the defendant's position and he has not provided any. Professor Reynolds suggests, in her treatise on family law, that to establish a plaintiff's consent as a defense to an action for criminal conversation, a defendant would be required to show that before the sexual intercourse between the defendant and the plaintiff's spouse occurred, the plaintiff "either encouraged the conduct or

at least approved it." Reynolds, *Lee's North Carolina Family Law*, § 5.46(B), at 405 (5th ed., 1993). There is no evidence of such approval on plaintiff's part here. Thus, we hold that the cited provision of the separation agreement does not, without evidence of plaintiff's prior knowledge and approval of defendant's sexual intercourse with Mrs. Nunn while she was married to plaintiff, establish his consent to such intercourse.

[9] Defendant also argues that the trial court erred in refusing to set aside the compensatory damage award for criminal conversation and grant a new trial as to that issue because there was no evidence in the record upon which the jury could have based an award of compensatory damages for criminal conversation. In particular, he asserts that any loss sustained by the plaintiff arose from the ending of the couple's sexual relationship which occurred prior to defendant's sexual involvement with Mrs. Nunn.

In *Sebastian v. Kluttz*, 6 N.C. App. at 220, 170 S.E.2d at 115-16, this Court held that:

> In a cause of action for criminal conversation the measure of damages is incapable of precise measurement; however, it has been held, and we think properly so, that the jury in awarding damages may consider the loss of consortium, mental anguish, humiliation, injury to health, and loss of support by the wife.

Plaintiff presented substantial evidence from which a jury could have determined that he experienced mental anguish and humiliation due to the affair between his wife and defendant. In particular, we point to the testimony by plaintiff's father as to his depressed mental state and plaintiff's own testimony that he began consulting with his pastor to help deal with his emotional turmoil. There was also evidence that even up to a week before trial, plaintiff continually tried to contact his former wife by leaving notes on her car asking for a chance to speak with her again. The trial court did not abuse its discretion in failing to set aside the jury award or to grant a new trial.

### Punitive Damages

Defendant also contends there was insufficient evidence to warrant submission of the issue of punitive damages to the jury or to support the jury's award of punitive damages on either claim. We disagree.

**[10]** With respect to claims for alienation of affection:

> In order for the question of punitive damages to be submitted to
> the jury, . . . there must be evidence of circumstances of aggrava-
> tion beyond the proof of malice necessary to satisfy the elements
> of the tort to sustain a recovery of compensatory damages.
> Specific circumstances of aggravation include "willful, wanton,
> aggravated or malicious conduct."

*Ward v. Beaton*, 141 N.C. App. 44, 49-50, 539 S.E.2d 30, 34 (2000) (cita-
tions omitted), *cert. denied*, 353 N.C. 398, 547 S.E.2d 431 (2001).
Evidence of "sexual relations" between defendant and plaintiff's
spouse has been held to satisfy this requirement. *Id.* Defendant
admitted to sexual relations with Mrs. Nunn during her marriage
to plaintiff.

In addition, directly after plaintiff saw his wife and defendant
together through defendant's kitchen window, plaintiff and his father
went to the home of Bruce Allen and spoke with him and his wife
about the relationship between Mrs. Nunn and defendant. During that
conversation, defendant's mother called defendant and he came over
to their house. Both plaintiff and his father testified that defendant
laughed at them during the meeting. There was also evidence which
indicates that at some point in 1997, plaintiff and his son, Brandon,
saw defendant and Mrs. Nunn at a restaurant and that Brandon told
defendant to stay away from his mother, thus informing defendant
that his actions were affecting the children. Both of these circum-
stances have been held to represent evidence of aggravation. *See
Shaw v. Stringer*, 101 N.C. App. 513, 517, 400 S.E.2d 101, 103 (1991)
(defendant's laughter about situation held to be evidence of malice);
*Hutelmyer v. Cox*, 133 N.C. App. at 371, 514 S.E.2d at 560 (knowledge
that relationship would harm plaintiff's children listed as factor show-
ing malice). There was substantial evidence on which the jury could
base an award of punitive damages for alienation of affection.

**[11]** Proof of willful, wanton, or aggravated conduct is also required
for an award of punitive damages for criminal conversation. *Horner*,
132 N.C. App. at 325, 511 S.E.2d at 344. However, "the same sexual
misconduct necessary to establish the tort of criminal conversation
may also sustain an award of punitive damages." *Id.* at 327, 511 S.E.2d
at 346. Where there is sufficient evidence to put the claim of criminal
conversation before the jury, the jury may also consider the issue of
punitive damages. *See id.* As we have decided above, there was suffi-
cient evidence of defendant's sexual intercourse with Mrs. Nunn dur-

ing her marriage to plaintiff to support a verdict for plaintiff on the issue of criminal conversation; such evidence was also sufficient to support an award of punitive damages for criminal conversation. The trial court did not abuse its discretion in denying defendant's motion for a new trial on the punitive damages issue.

## IV.

[12] By his fourth argument, defendant argues the trial court erred in its instructions on (1) alienation of affection; (2) criminal conversation; and (3) punitive damages. We reject his arguments. Defendant first contends the trial court erred in instructing the jury on alienation of affection because the court refused to give defendant's requested instruction that to be liable, he must have had an active role in alienating Mrs. Nunn's affection, and that any claim must be based on pre-separation conduct.

We first reject defendant's contention that the trial court erred in refusing to instruct the jury that one cannot be liable for alienation of affection where the defendant becomes the object of the affection of the plaintiff's spouse which has been alienated from the plaintiff absent defendant's active participation, initiation, or encouragement in causing the loss of affection. Included in the trial court's instructions was an instruction that in order to be liable, a defendant must have "engaged in malicious and wrongful conduct with respect to th[e] marital relationship," malicious conduct being defined as that which is "intended to or is recklessly indifferent to the likelihood that it will destroy or diminish the genuine marital relationship," and that the defendant's conduct must have been the controlling or effective cause of the alienation of affection. This instruction sufficiently establishes that which defendant intended to convey through his requested instruction, that in order to be found liable, there must exist some wrongful action on the part of the defendant leading to the alienation. The jury instruction given by the trial court here is in accordance with the North Carolina Pattern Jury Instructions and the statements of law contained in *Hutelmyer*, *supra*, cited by defendant in support of his argument. We will not find error in the trial court's instruction simply because it was not given in the exact language and form proffered by defendant.

Defendant next asserts the trial court erred in failing to instruct the jury that a finding in favor of plaintiff on this claim could only be based on pre-separation conduct. However, in his proposed instructions, defendant did not propose that such a charge be included, but

only that the court instruct that "[i]n determining whether a genuine marital relationship existed, you may consider whether a valid separation agreement existed before the malicious and wrongful conduct occurred." In support thereof, defendant cited *Sebastian,* standing for the proposition that a valid separation agreement does not necessarily bar an action for alienation of affection occurring prior to the separation. *See Sebastian,* 6 N.C. App. at 214, 170 S.E.2d at 111. There is no indication defendant ever specifically requested that the trial court instruct the jury it was only to consider pre-separation conduct, or that defendant presented the trial court with any authority in support of such a position. Accordingly, we decline to review this argument for the first time on appeal. *See, e.g., Tomika Investments, Inc. v. Macedonia True Vine Pentecostal Holiness Church of God, Inc.,* 136 N.C. App. 493, 499, 524 S.E.2d 591, 595 (2000).

In any event, defendant argues the prejudice in the court's failure to so instruct the jury lies in the lack of evidence of any wrongful pre-separation conduct, necessarily leading to the conclusion that the jury could only have based its finding on post-separation evidence. As we have already determined, however, there was sufficient evidence of defendant's pre-separation conduct to support the jury's finding.

Defendant also argues he is entitled to a new trial because, although the jury was initially instructed in accordance with his request, the trial court subsequently withdrew the instructions and re-instructed the jury, omitting defendant's requested instructions. Defendant contends the trial court's action emphasized to the jury that it could find in favor of plaintiff despite Mrs. Nunn's affection having been alienated from plaintiff prior to her beginning a relationship with defendant.

We disagree that the trial court's correction of its prior instruction constitutes error. Our Supreme Court has recognized that "[w]here a judge has erroneously instructed the jury, he undoubtedly has the right, in fact, it is his duty, when the error is called to his attention, to correct it by accurately informing the jury what the law is." *Griffin v. Pancoast,* 257 N.C. 52, 58, 125 S.E.2d 310, 315 (1962). So long as the subsequent instruction sets forth the law in such a manner that the jury cannot be under any misapprehension as to the state of the law, any previous error does not warrant a new trial. *Id.*

In this case, the trial court's subsequent instruction correctly and adequately set forth the law to be applied by the jury, and we discern

no basis for concluding the jury was confused as to the law it was to apply. Further, the fact the jury had previously been given a different instruction is not grounds for asserting prejudice where the trial court in this case specifically instructed the jury that it was to "disregard" the prior instruction. A jury is presumed to follow the court's instructions. *See Poole v. Copland, Inc.*, 348 N.C. 260, 264, 498 S.E.2d 602, 604 (1998); *Goble v. Helms*, 64 N.C. App. 439, 446, 307 S.E.2d 807, 813 (1983), *disc. review denied*, 310 N.C. 625, 315 S.E.2d 690 (1984). Thus, we must presume the jury simply disregarded the prior instruction and based its verdict solely on the subsequent instruction, which we have held to be a proper statement of the law.

**[13]** Next, defendant asserts the trial court erred in instructing the jury as to compensatory damages for alienation of affection inasmuch as the court informed the jury that in assessing plaintiff's damages, if any, it could consider the degree to which plaintiff and Mrs. Nunn's relationship was destroyed, in addition to plaintiff's mental anguish, shame, humiliation, loss of reputation and support, and "[a]ny other adverse effect on the quality of the marital relationship." Defendant contends the instruction was not supported by the evidence because, he contends, Mrs. Nunn was not providing plaintiff any support, company, or affection at the time she and defendant engaged in a romantic relationship, and that, due to previous rumors about Mrs. Nunn's extra-marital affairs, defendant's conduct could not have harmed plaintiff's reputation. We have previously rejected defendant's contentions as to the sufficiency of the evidence, and defendant has failed to cite any authority to support his argument that the trial court's instruction was otherwise erroneous. These assignments of error are overruled.

**[14],[15]** Defendant also assigns error to the trial court's instructions to the jury regarding the criminal conversation claim. Based on his theory that the separation agreement was either a waiver or consent for sexual intercourse between his wife and another person, defendant argues that the trial court erred in instructing the jury that it should not consider whether plaintiff and his wife had separated before the sexual intercourse occurred. As discussed above, we reject defendant's assertions that the agreement constituted waiver and/or consent. Next, defendant argues that the trial court erred in instructing the jury on factors for determining an amount of compensatory damages to award on this claim. Similar to the argument defendant made with respect to the instruction for compensatory damages for alienation of affection, this argument fails for several

reasons: (1) there was evidence in the record from which the jury could find that plaintiff suffered loss of consortium, mental anguish, or humiliation as a result of defendant's sexual relationship with his wife, (2) the instruction allowed the jury to award only nominal damages if the factors were not present, and (3) defendant cites no law supporting his attack on the instruction. Therefore, we hold there was no error in the trial court's instructions on the claim of criminal conversation.

**[16]** Lastly, defendant argues that the trial court erred in its instructions to the jury on the issue of punitive damages. With respect to defendant's arguments on the sufficiency of the evidence, we have already determined that the instruction was supported by the evidence. Defendant also alleges that the trial court did not provide the jury with any standards for the assessment of punitive damages, and that this omission violated his rights to due process and equal protection under the United States Constitution and similar rights under the North Carolina Constitution. First, the trial court did instruct the jury that punitive damages were within its discretion to award and that the amount should bear a "reasonable relationship to the sum reasonably needed to punish the defendant . . . and deter . . . others . . . ." Defendant cites no authority for these alleged violations of his constitutional rights or for why the standard articulated by the judge was not constitutionally adequate. N.C.R. App. P. 28(b)(6). Second, there is no indication in the record, and defendant points to none, that defendant objected to the instructions on punitive damages or submitted a proposed instruction on the issue. N.C.R. App. P. 10(b)(1). This assignment of error is overruled.

No error.

Chief Judge EAGLES and Judge THOMAS concur.