An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA14-1090

Filed: 21 July 2015

Moore County, No. 13 CVS 1337

ZONA R. WILLIS, Plaintiff,

v.

MARILYN A. WILLIS, Defendant.

Appeal by defendant from orders entered 19 June 2014 by Judge Beecher R. Gray in Moore County Superior Court. Heard in the Court of Appeals 8 April 2015.

> *Wyrick Robbins Yates & Ponton LLP, by Tobias S. Hampson and K. Edward Greene, for plaintiff-appellee.*

> *Doster, Post, Silverman, Foushee, Post & Patton, by Jonathan Silverman, for defendant-appellant.*

CALABRIA, Judge.

Marilyn A. Willis ("defendant") appeals from an order denying her motion to dismiss Zona R. Willis's ("plaintiff") complaint alleging causes of action for alienation of affections, criminal conversation, and intentional infliction of emotional distress,

as well as an order granting plaintiff's motion to compel discovery due to lack of personal jurisdiction. We affirm.

## I. Background

Plaintiff married Thomas Willis ("Tom") on 11 January 1974. On 30 December 2011, Tom informed plaintiff that he was not returning home, and subsequently requested a divorce. Plaintiff discovered that Tom had been having an affair with defendant, a resident of Charleston, South Carolina, during the marriage. During the divorce proceedings, the trial court determined Tom and plaintiff's date of separation was 31 December 2011. On 2 January 2012, defendant updated her Facebook relationship status from "single" to "engaged." Plaintiff and Tom were divorced on 7 February 2013. Tom and defendant were married in Laurinburg, North Carolina on 9 February 2013, two days after plaintiff and Tom were divorced.

On 14 November 2013, plaintiff filed a complaint against defendant, alleging, *inter alia*, that prior to 30 December 2011, plaintiff and Tom had a good and loving marriage until defendant willfully and intentionally seduced, enticed, and alienated Tom's affections from plaintiff. As a result of defendant's actions, plaintiff believed she was entitled to damages for alienation of affections, criminal conversation, and intentional infliction of emotional distress. Defendant was subsequently served with plaintiff's first set of interrogatories and request for production of documents. On 16 December 2013, defendant filed a motion to dismiss pursuant to Rules 12(b)(2), (3),

and (4) for lack of personal jurisdiction and failure to be personally served with process. On 27 February 2014, plaintiff filed a motion to compel discovery, since defendant refused to respond to plaintiff's discovery requests due to alleged lack of jurisdiction and improper service of the discovery requests. Subsequently, plaintiff filed a motion to amend her complaint to include additional allegations to address the issue of whether defendant had met the minimum contacts test for North Carolina to exercise personal jurisdiction. The trial court granted plaintiff's motion to amend her complaint.

On 19 June 2014, the trial court found that the summons and complaint were sent to the sheriff in Charleston, South Carolina, and that defendant was properly served. The trial court concluded that service of the summons and complaint complied with Rule 4(j)(1a) of the North Carolina Rules of Civil Procedure. The trial court also concluded that "[d]efendant's activities [were] sufficient to permit the exercise of jurisdiction under North Carolina's long arm statute (NC Gen. Stat. § 1-75.4 (3) & (4)), in her claims against Defendant for alienation of affections, criminal conversation, and intentional infliction of emotional distress[,]" and that defendant's activities were "sufficient to establish minimum contacts with North Carolina and comport with due process." The trial court entered an order denying defendant's motion to dismiss, and also entered an order compelling defendant to answer

plaintiff's first set of interrogatories and request for production of documents. Defendant appeals both orders.

## II. Personal Jurisdiction

Defendant first argues that the trial court erred in denying her motion to dismiss. Specifically, defendant contends that the trial court lacked personal jurisdiction and that the findings were not supported by competent evidence. Since defendant challenges jurisdiction, she also contends that the exercise of jurisdiction violates her due process rights. We disagree.

As an initial matter, although defendant's appeal is interlocutory, it is properly before us because "motions to dismiss for lack of personal jurisdiction are statutorily deemed to be immediately appealable." *Fox v. Gibson*, 176 N.C. App. 554, 556-57, 626 S.E.2d 841, 843 (2006); s*ee* N.C. Gen. Stat. § 1-277(b) (2013) ("Any interested party shall have the right of immediate appeal from an adverse ruling as to the jurisdiction of the court over the person or property of the defendant[.]").

"[T]he standard of review of an order determining personal jurisdiction is whether the findings of fact by the trial court are supported by competent evidence in the record; if so, this Court must affirm the order of the trial court." *Cooper v. Shealy*, 140 N.C. App. 729, 732, 537 S.E.2d 854, 856 (2000) (citation omitted).

> The determination of whether jurisdiction is statutorily and constitutionally permissible due to contact with the forum is a question of fact. To resolve a question of personal jurisdiction, the court must engage in a two step

- 4 -

analysis. First, the court must determine if the North Carolina long-arm statute's (N.C. Gen. Stat. § 1-75.4) requirements are met. If so, the court must then determine whether such an exercise of jurisdiction comports with due process.

*Id*. (internal citations omitted).

Pursuant to North Carolina's long-arm statute, North Carolina courts permit the exercise of personal jurisdiction, *inter alia*, "[i]n any action claiming injury to person or property . . . within or without this State arising out of an act or omission within this State by the defendant" or in an action claiming injury to person or property within North Carolina "arising out of an act or omission outside this State by the defendant, provided in addition that at or about the time of the injury . . . [s]olicitation or services activities were carried on within this State by or on behalf of the defendant[.]" N.C. Gen. Stat. § 1-75.4(3), (4)(a) (2013). In North Carolina, the long-arm statute requires only

> that the action 'claim' injury to person or property within this state in order to establish personal jurisdiction. The statute does not require there to be evidence of proof of such an injury. Therefore, in order for plaintiff's claim for alienation of affections to withstand defendant's motion to dismiss, plaintiff must have alleged in her complaint that: (1) plaintiff and [her husband] were happily married and a genuine love and affection existed between them; (2) the love and affection [between them] was alienated and destroyed; and (3) the wrongful and malicious acts of defendant produced the alienation of affections. Furthermore, for plaintiff's criminal conversation action to survive, plaintiff must have alleged that there were sexual relations between defendant and plaintiff's husband.

*Cooper*, 140 N.C. App. at 732-33, 537 S.E.2d at 856-57 (internal citations and quotation marks omitted).

Just as the plaintiff in *Cooper* properly alleged injuries, plaintiff in the instant case alleged in her amended verified complaint that she and Tom had a good and loving marriage, a genuine love and affection existed between them, and as a result of defendant's actions, the genuine love and affection was destroyed. Plaintiff also alleged that, beginning in October 2011, defendant's actions of soliciting plaintiff's husband's affections within North Carolina were intentional, wrongful, and malicious, alienated Tom's affections, and led to his abandonment of plaintiff. The verified amended complaint further alleged that by defendant's acts of sexual intercourse with Tom, she engaged in criminal conversation in North Carolina.

The long-arm statute authorizes the exercise of personal jurisdiction over a non-resident defendant in alienation of affections actions when telephonic or e-mail communications are carried on within North Carolina. *See Brown v. Ellis*, 363 N.C. 360, 678 S.E.2d 222 (2009); *see Fox*, 176 N.C. App. 554, 626 S.E.2d 841. In *Brown*, the plaintiff, a resident of North Carolina, alleged in his complaint for alienation of affections that the defendant, a resident of California, "initiated frequent and inappropriate, and unnecessary telephone and e-mail conversations with [the plaintiff's wife] on an almost daily basis." 363 N.C. at 363, 678 S.E.2d at 224. The Supreme Court of North Carolina held that, pursuant to N.C. Gen. Stat. § 1-

75.4(4)(a), the trial court's exercise of personal jurisdiction over the defendant was proper. *Id.* at 364, 678 S.E.2d at 224.

In *Fox*, the plaintiff filed a complaint for alienation of affections, in which she alleged that the defendant, a resident of Georgia, had "enticed [the plaintiff's] husband from her and acquired an undue influence over him which was the direct cause of great marital discord between them and their subsequent separation." 176 N.C. App. at 556, 626 S.E.2d at 842. In support of her allegations, the plaintiff produced the affidavit of her estranged husband, in which he stated that he and the defendant "engaged in numerous telephone conversations while she resided in Georgia and he resided in North Carolina[,]" and that the defendant "sent e-mail messages to him in North Carolina from the state of Georgia." *Id.* at 556, 626 S.E.2d at 843. The *Fox* Court found that there was a direct link between the contacts and the injuries alleged in the complaint. *Id.* at 559, 626 S.E.2d at 844. Therefore, both Courts held that telephonic or e-mail communications carried on within North Carolina by or on behalf of a party, may be sufficient acts to establish long-arm jurisdiction.

Although defendant concedes that telephonic communications such as those in *Brown* and *Fox* may be sufficient acts to establish long-arm jurisdiction, defendant contends that these cases do not apply to her. Defendant contends that the trial

court's findings of fact numbers nine and ten are not supported by the evidence. In finding of fact number nine, the court found:

> 9. The telephone records of Thomas Willis show Defendant spoke to him at least one hundred forty (140) times between October 31, 2011 and December 10, 2011. The records include telephone calls coming from the Defendant to the Thomas Willis [*sic*] in North Carolina on the following dates: November 10, 2011; November 16, 2011 (2 calls); November 17, 2011 (3 calls); November 19, 2011; November 20, 2011; November 21, 2011 (4 calls); November 22, 2011 (3 calls); November 23, 2011; November 26, 2011; December 1, 2011; December 2, 2011; December 9, 2011; and December 10, 2011. All the calls to Thomas Willis were received by him while he was a resident of Moore County, North Carolina. The frequency and the timing of the telephone calls suggest that they were of a personal nature.

Defendant does not dispute that she and Tom talked on the telephone. Rather, she disputes the trial court's characterization of the calls as personal in nature. Additionally, defendant disputes Tom's location at the time of the calls. In plaintiff's affidavit submitted in response to defendant's motion to dismiss, plaintiff alleged that on 31 October 2011, defendant and Tom had a dinner date in Charleston, South Carolina. Subsequently, defendant's telephone calls to and from Tom on her home and cell phone numbers, as documented on Tom's telephone records, and show at least one hundred forty (140) calls in the forty (40) days between 31 October 2011 and 10 December 2011. Defendant contends that plaintiff's affidavit is completely speculative as to the nature of the calls and demonstrates no personal knowledge as to the context of the telephonic communications. In addition, defendant claims in her

affidavit supporting her motion to dismiss that any communications between her and Tom "prior to December 31, 2011 were platonic in nature concerning childhood times together . . . and updating one another about our lives." Since defendant denied in her affidavit that she had any personal contact with Tom in North Carolina prior to 31 December 2011, and made no effort to argue how "platonic" telephone calls would be mutually exclusive of a personal nature, the trial court found from her description of the telephone calls that, contrary to her characterization, the calls were personal in nature, and not business transactions. The trial court's finding characterizing the telephone calls as personal in nature is supported by the evidence.

Defendant also alleged in her affidavit that she was not in North Carolina at the time she "may have participated in any such communication," and that Tom "would have been traveling outside of North Carolina, and in particular in South Carolina, for business" at that time. However, the trial court found that there were "telephone calls coming from the Defendant to the Thomas Willis [*sic*] in North Carolina[.]" Tom's phone records indicated that there were several incoming calls from defendant's phone numbers between 10 November 2011 and 10 December 2011. Even though the record before the trial court showed that defendant resided in Charleston, South Carolina, since the phone records indicated that those incoming calls occurred while Tom was located in North Carolina, the trial court's finding that

defendant called Tom while he was located in North Carolina is supported by the evidence.

Defendant further contends that the trial court erred in addressing Tom's North Carolina residency rather than where he was physically located when he received the telephone calls. However, this contention simply ignores the remainder of the trial court's finding of fact number nine. Finding nine focuses expressly on the fact that Tom was in North Carolina when he received calls from defendant. Moreover, the trial court found that Tom remained a North Carolina resident during this entire time, which this Court has recognized is relevant to personal jurisdiction analysis. *Fox*, 176 N.C. App. at 559, 626 S.E.2d at 844 (noting as support for the assertion of personal jurisdiction, the defendant "engaged in numerous telephone conversations with [spouse] while he resided in North Carolina").

In finding of fact number ten, defendant contends that the trial court "inappropriately focused on post date of separation conduct":

> 10. The Defendant admitted, in a deposition taken during the divorce action between Plaintiff and Thomas Willis, to visiting Thomas Willis in Pinehurst, North Carolina "many, many times" and "more than likely" having sex with him in a condominium Thomas Willis had rented in Pinehurst.

Defendant is mistaken, however, because "a claim for criminal conversation may be based solely upon post-separation sexual relations." *Nunn v. Allen*, 154 N.C. App. 523, 535, 574 S.E.2d 35, 43 (2002) (citation omitted). Plaintiff and Tom were

separated on 31 December 2011. In defendant's deposition, she testified that she had visited Pinehurst "many, many times," had visited Tom in Pinehurst at a condominium he was residing in "once or twice," and had "more than likely" engaged in sexual intercourse with Tom at the condominium between March and September of 2012. In addition, Tom testified in his deposition that he and defendant had begun sexual relations in March of 2012, shortly after he separated from plaintiff. The trial court's finding regarding defendant's conduct is both appropriate and supported by the evidence.

Based upon the evidence establishing a direct link between defendant's contacts with North Carolina and plaintiff's injuries caused by defendant, the trial court's findings of fact support its conclusion that "[d]efendant's activities are sufficient to permit the exercise of jurisdiction under North Carolina's long arm statute (NC Gen. Stat. § 1-75.4 (3) & (4)), in [plaintiff's] claims against Defendant[.]"

We next examine whether the exercise of personal jurisdiction under the authority of N.C. Gen. Stat. § 1-75.4 violates the due process clause of the Fourteenth Amendment to the Constitution. "Due process requires that the defendant have 'minimum contacts' with the state in order to satisfy 'traditional notions of fair play and substantial justice.'" *Cooper,* 140 N.C. App. at 734, 537 S.E.2d at 857 (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 90 L.Ed. 95, 102 (1945)). When determining whether defendant's activities are sufficient to establish

minimum contacts, the court must consider: "(1) the quantity of the contacts; (2) the quality and nature of the contacts; (3) the source and connection of the cause of action to the contacts; (4) the interests of the forum state, and (5) the convenience to the parties." *Id.*, 537 S.E.2d at 857-58 (citation omitted). "[T]he court must weigh the factors and determine what is fair and reasonable to both parties." *Fox,* 176 N.C. App. at 560, 626 S.E.2d at 845.

In the instant case, the trial court considered the quantity, quality, and nature of the contacts, and found that there were 140 telephone calls between defendant and Tom between 31 October 2011 and 10 December 2011 while Tom was married to plaintiff, that several incoming calls were from defendant to Tom that he received in North Carolina, and that the frequency and timing of the calls suggested that they were of a personal nature. Additionally, the trial court considered the source and connection of the contacts. Plaintiff alleged in her complaint that the destruction of her marriage was the "direct and proximate result" of defendant's actions, including the telephone calls. *See Cooper*, 140 N.C. App. at 735, 537 S.E.2d at 858 (plaintiff's allegation that there was a direct relationship between defendant's contacts with plaintiff's husband and the destruction of plaintiff's marriage was sufficient to establish the source and connection of the cause of action to the contacts).

Furthermore, our state Supreme Court has recognized the United States Supreme Court "has also said that for purposes of asserting 'specific' jurisdiction, a

defendant has 'fair warning' that [s]he may be sued in a state for injuries arising from activities that [s]he 'purposefully directed' toward that state's residents." *Tom Togs, Inc. v. Ben Elias Industries Corp.*, 318 N.C. 361, 366, 348 S.E.2d 782, 786 (1986) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 85 L.Ed. 2d 528, 540-41 (1985)). Here, plaintiff's verified amended complaint and affidavit, as well as defendant's affidavit, establish that defendant purposefully directed her activities toward Tom, a North Carolina resident, and a number of these activities involved telephone communication and occurrences of sexual intercourse with Tom while he was in the State of North Carolina.

With regard to the interests of the forum state, the trial court concluded "North Carolina has a strong interest in protecting its citizens from local injury caused by the tortious conduct of foreign citizens[,]" and that plaintiff could not bring the claims for alienation of affections and criminal conversation in defendant's state of residency because South Carolina had abolished those causes of action.[1]

The final factor pertains to the convenience of the parties. The trial court specifically found that, considering the convenience to the parties, most of the witnesses having personal knowledge of and evidence regarding the impact of defendant's relationship with Tom on plaintiff's marriage would "more than likely be located in North Carolina." Additionally, defendant resides in a neighboring state,

---

[1] *See* S.C. Code Ann. § 15-3-150 (2013) (abolishing the tort of criminal conversation); *see Russo v. Sutton*, 310 S.C. 200, 422 S.E.2d 750 (1992) (abolishing the tort of alienation of affections).

causing a minimal travel burden on the defendant to defend the claims in North Carolina.

The trial court considered and weighed all five factors and determined that it was fair and reasonable to both parties that defendant's activities were sufficient to establish minimum contacts with North Carolina "in order to satisfy 'traditional notions of fair play and substantial justice.'" *Cooper*, 140 N.C. App. at 734, 537 S.E.2d at 857 (citation omitted). Therefore, the trial court did not err in denying defendant's motion to dismiss for lack of personal jurisdiction, since the trial court properly determined that the exercise of personal jurisdiction did not violate defendant's due process rights.

### III. Order to Compel Discovery

Defendant also argues that the trial court erred in entering an order compelling her to respond to plaintiff's first set of interrogatories and request for production of documents. Specifically, defendant contends (1) that the trial court lacked personal jurisdiction and (2) that plaintiff's discovery requests are "unreasonably annoying, oppressive and cause[] undue burden or expense for the defendant" in that the requests cover "virtually every aspect of the Defendant's life for a number of years and her objection to the discovery should have been sustained and a protective order granted."

Since the trial court properly determined that defendant's activities were sufficient to permit the exercise of personal jurisdiction over defendant pursuant to the long-arm statute and due process requirements, defendant's argument regarding jurisdiction fails. Additionally, defendant fails to cite any authority to support the remainder of her argument. Therefore, the remainder of defendant's argument is deemed abandoned. *See* N.C.R. App. P. 28(b)(6) ("Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned.").

## IV. Conclusion

There was competent evidence in the record to support the trial court's findings of fact. The trial court's findings of fact support its conclusion that "[d]efendant's activities are sufficient to permit the exercise of jurisdiction under North Carolina's long arm statute (NC Gen. Stat. § 1-75.4 (3) & (4)), in [plaintiff's] claims against Defendant for alienation of affections, criminal conversation, and intentional infliction of emotional distress." Furthermore, the exercise of personal jurisdiction does not violate defendant's due process rights. Therefore, the trial court did not err in denying defendant's motion to dismiss and ordering defendant to respond to plaintiff's first set of interrogatories and request for production of documents. We affirm the orders of the trial court.

AFFIRMED.

Judges STROUD and TYSON concur.

Report per Rule 30(e).